GEORGE H. HUBBARD v. EMMA DAHLKE, Appellant.

Division One, March 28, 1919.

1. QUIETING TITLE: Suit in Equity: Determined by Pleadings. Whether an action to ascertain and determine title to land is an action at law or a suit in equity may be determined by the pleadings. A plea that plaintiff in good conscience should be estopped from claiming title under his quit-claim deed, because he was at the time and had been the agent of defendant as to the land, carries the case to the equity side of the court.

2. MORTGAGE: Foreclosure as to Makers: Record Owner Not Party. The foreclosure of a mortgage by a proceeding in court against the mortgagors only, after they had sold the land by a deed recorded when the suit was brought, leaves the pure record title in such record owner or his grantees.

Hubbard v. Dahlke.

3. ———: Limitations: Foreclosure. All mortgages and deeds of trust executed after the Act of 1891 became effective are barred whenever the note or debt secured thereby is barred, and if so barred cannot be foreclosed.

4. ———: ———: Purchaser Subject to Mortgage: Possession. A purchaser from the mortgagor, subject to a mortgage, can invoke the Statute of Limitations which prevents a proceeding to foreclose a mortgage if the note or debt is barred, whether he has or has not been in possession since his purchase. He has the same right to invoke the statute that the mortgagor himself would have had there been no sale.

5. LIMITATIONS: Adverse Possession: Paying Taxes. A claim of ownership, paying taxes and attempts to sell wild land do not constitute such possession, after a futile attempt at foreclosure of a mortgage and a purchase thereat, as is sufficient to prevent the running of the ten-year Statute of Limitations.

6. PRINCIPAL AND AGENT: Purchase by Agent: Fiduciary Relation. Good conscience will not permit an agent to buy up an outstanding title as against his principal. Where the holder of a note in good faith bought at a void foreclosure sale, and thereafter plaintiff, at his own solicitation, became her agent to pay the taxes and to sell the land, and while acting as such agent discovered that she had no title and advised with her about perfecting the title and the sale of the land, a purchase by him inures to her benefit, and in a suit to quiet title the decree should vest the title in her upon condition that she pay him what he had expended in acquiring the out-standing title; and in such case the fact that she failed to answer his letter, written a short time before he purchased, in which he asked her to name her price, did not change the fiduciary relation which had existed for years.

Appeal from Morgan Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED. (*with directions.*)

*A. L. Ross* and *H. G. Pope* for appellant.

(1) Plaintiff should not be heard to interpose the Statute of Limitations as a bar to the relief prayed for by defendant in her answer and cross petition. If Seiffert had been in possession at any time he was in no position to dispute the title of appellant, because he

bought and took title subject to the encumbrance held by her. His claim of title was not hostile to that of appellant and never became hostile. Respondent stepped into Seiffert's shoes, and cannot make any greater or more effective claim of title than Seiffert could make. Lewis v. Schwenn, 93 Mo. 26; Booker v. Armstrong, 93 Mo. 49; Eyerman v. Pyron, 151 Mo. 117; McMurray v. McMurray, 180 Mo. 527; Sauter v. Leveridge, 103 Mo. 615; State ex rel. v. Allen, 124 Mo. App. 465; Cobb v Houston, 117 Mo. App. 645; Chiles v. School District, 103 Mo. App. 240; Bensley v. Haeberle, 20 Mo. App. 648; Stayton v. Gastain, 221 Mo. 712; Chouteau v. Riddle, 110 Mo. 366; Combs v. Goldsworthy, 109 Mo. 160; Benton v. Czarlinsky, 101 Mo. 275. (2) Plaintiff was the agent for defendant in the sale of the land in controversy and for the payment of taxes thereon, and law and equity prohibit him from purchasing the property and taking title in his name, and by purchasing the property under such circumstances he made himself liable as trustee in relation thereto for the benefit of defendant, his principal, and he is estopped from acquiring title to said land. 31 Cyc. 1432, 1434; Grumley v. Webb, 44 Mo. 444; Cummings v. Parker, 250 Mo. 437; Meek v. Hurst, 223 Mo. 688; Corder v. O'Neill, 207 Mo. 647; Euneau v. Rieger, 105 Mo. 659, 673; Atlee v. Fink, 75 Mo. 104; McClure v. Ullman, 102 Mo. App. 703; Smith v. Tyler, 57 Mo. App. 672; Dennison v Aldrich, 114 Mo. App. 708; Rogers v. Lockett, 28 Ark. 290; Hardenbergh v. Bacon, 33 Cal. 356; Ringo v. Binns, 10 Pet. 269; Cragin v. Powell, 128 U. S. 691; Essex Trust Co. v. Enwright, 47 L. R. A. (N. S.) 567; Hutton v. Sherrard, 1915 E. L. R. A. p. 976 foot-note; Witte v. Storm, 236 Mo. 470; Murdock v. Milner, 84 Mo. 96, 102; 1 Am. & Ency. Law (2 Ed.), p. 1085. (3) Defendant, by adverse possession for more than ten years, obtained title to said land, even though the foreclosure of the mortgage lien on the property was defective, and is entitled to have the title adjudged in her. Turner v. Hall, 60 Mo. 271:

Bartlett v. O'Donoghue, 72 Mo. 563; Leeper v. Baker, 68 Mo. 407; Shea v. Shea, 154 Mo. 600.

*Capron, Butcher & Knoop* for respondent.

(1)  Actions to quiet title are actions at law and when tried before the court the court sits as a jury. Brandt v. Bente, 177 S. W. 377. (2) An action on the note secured by the mortgage sought to be foreclosed was long since barred by the Statute of Limitations, and by virtue of Sec. 1892 appellant's action to foreclose the mortgage was also barred. Sec. 1892, R. S. 1909, Laws 1891, p. 184.  (3)  Since the enactment of said statute an action to foreclose a deed of trust is barred when an action on the note secured by the deed of trust is barred. Howe v. Erwin, 221 Mo. 101; Bumgardner v. Wealand, 197 Mo. 433; Higgins v. Harvester Co., 181 Mo. 310.  (4)  In the fourth count of appellant's cross petition appellant attemps to plead an estoppel. Neither the allegations in the count, nor the evidence offered in support of it, are sufficient to estop respondent. Blodgett v. Perry, 97 Mo. 263; Weir v. Lumber Co., 186 Mo. 388.  (5)  The evidence in support of appellant's claim of title by adverse possession is wholly insufficient. Chilton v. Comanianni, 221 Mo. 699; Nye v. Alfter, 127 Mo. 529.

GRAVES, J.—Action to try title. Petition in the conventional form, including, however, the allegation that the land involved is in the possession of no person, and the further allegation that plaintiff is unable to describe the interest of defendant, because such interest is not known to plaintiff.

The answer plead (1) general denial; (2) by way of answer and cross-bill she avers that she held a mortgage deed given by A. F. & L. E. Kull on the land in dispute; that she employed reputable counsel to foreclose this mortgage by suit; that such counsel brought the suit against the two Kulls; that her said counsel bought in the land at special execution sale,

under such judgment, and then conveyed to her, and she asked for a new foreclosure of the mortgage deed; (3) this count likewise recounts the foregoing facts and others and asks for a foreclosure; (4) is a plea of estoppel in which it is averred that Hubbard was the agent of plaintiff and was thereby in equity estopped from acquiring an outstanding title against her, and (5) plea of ten-year Statute of Limitations.

The reply fully met the issues of the answer. The court declined to hear evidence on the second and third counts of the answer on the ground that the right to foreclose the mortgage had long since been barred.

On the other matters of defense the trial court found the facts against defendant, and found plaintiff to be the fee simple owner of the land. From such decree, defendant has appealed.

I. The whole trouble (for defendant) in this case arises out of the slip of her counsel in not making the record owner of the land a party to the foreclosure proceeding. The parties at the trial made this admission:

"It was admitted by both parties to this action that the common source of title to the real property in controversy was A. F. Kull and L. E. Kull, his wife; that Kull and his wife executed a mortgage to the defendant, Emma Dahlke, said mortgage being dated November 7, 1893, and being given to secure a loan of $400 that they borrowed from said defendant, and due one year after date; that on April 23, 1895, A. F. Kull and L. E. Kull, his wife, conveyed by warranty deed the property in question to John D. Jackson, subject to said mortgage; that on May 13, 1895, said John D. Jackson and wife, Ada, conveyed by warranty deed said property to Jacob Bird, subject to said mortgage; that on November 19, 1895, said Jacob Bird, single, conveyed by warranty deed said property to Louis Seiffert, subject to said mortgage."

Plaintiff then offered a quitclaim deed from Louis Seiffert and wife, Cassie, to himself, in consideration of the sum of fifty dollars. Defendant offered her petition and judgment in the foreclosure proceeding, which shows that it was only foreclosed as to the two Kulls. This proceeding was after Seiffert became the record owner. From this foreclosure sale, thence forward defendant was claiming the land and paying the taxes thereon, but as the land is wild, uncultivated land no one was in the actual possession thereof. We think it clear that the pure record title is in the plaintiff, so that unless defendant is aided by some one of her other defenses, she has lost rightfully on the trial below. There is sufficient pleaded in the answer to carry the case to the equity side of the court. This matter is determined by the pleadings. [Lee v. Conran, 213 Mo. 404; Brandt v. Bente, 177 S. W. 377.] Here we have a count charging that plaintiff in good conscience should be estopped from claiming title under his quitclaim deed, because he was and had been the agent of defendant as to these lands, and thereby, knew all the facts.

*Foreclosure.*

*Equity. Suit in*

II. The note and mortgage were given in November, 1893. In 1891 the General Assembly passed an act of two sections. [Laws of 1891, p. 184.] Section 1 of that act is now Section 1892, Revised Statutes 1909, and reads:

*Mortgage: Limitation.*

"No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, executed hereafter to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the Statutes of Limitations of this State."

Section 2 of the Act of 1891, mentioned, supra, seems to have served its purpose, and has been dropped from the statutes. However it read:

"Nor shall any suit be had or maintained to foreclose any such mortgage or deed of trust heretofore

executed to secure any such obligation after the expiration of two years after the passage of this act.''

It will be noted that Section 1 of the Act of 1891 had reference to mortgages and deeds of trust executed after the passage of the act. The note and mortgage here involved were executed after the passage of the Act of 1891, and fell within the purview of that law. So that when the note was barred under the law, the right to foreclose the mortgage was likewise barred. The futile attempt to foreclose would not change the situation. The trial court was right in holding that the two counts of the cross-bill asking a foreclosure could not be sustained. The right to foreclose was gone. [Stockton v. Teasdale, 212 Mo. 611; Hower v. Erwin, 221 Mo. 93: Bumgardner v. Wealand, 197 Mo. 433.] In other words, as to all mortgages and deeds of trust executed after the Act of 1891 became effective, the right to foreclose the mortgage or deed of trust was barred whenever the note secured thereby became barred.

III. Counsel for defendant seem to have a theory that, because Seiffert bought the land subject to the mortgage, he himself could not invoke the Statute of Limitations as to the bringing of a foreclosure suit. To be exact, here is their contention:

Right of Grantee.

''Plaintiff should not be heard to interpose the Statute of Limitations as a bar to the relief prayed for by defendant in her answer and cross petition. If Seiffert had been in possession at any time he was in no position to dispute the title of appellant because he bought and took title subject to the encumberance held by her. His claim of title was. not hostile to that of appellant and never became hostile. Respondent stepped into his (Seiffert's) shoes and cannot make any greater or more effective claim of title than Seiffert could make.''

When Seiffert bought, it is true that he only bought the equity of redemption formely owned by Kull. As a

matter of fact no one has ever been in the possession of this land. The most that has been done since 1901, by any person, indicating a claim of possession, is, the payment of the taxes by defendant. But even if Seiffert had gone into possession, it would not have changed the situation under this statute, Section 1892, Revised Statutes 1909, first enacted in 1891. If the defendant permitted her note, signed by Kull and wife, to become valueless, by failing to bring action thereon within ten years from its maturity, as she did, then by Section 1892, supra, she was prohibited from bringing an action to foreclose the mortgage. There are no qualifications to this statute. The actual possession of Seiffert cuts no figure. He had the title, subject to the mortgage which secured the debt of Kull. If the defendant saw fit to let her right to bring a foreclosure suit lapse under the terms of this statute, and thereafter she had brought such a suit and made Seiffert, the owner of the equity of redemption, a party to such suit, Seiffert would, under this statute, have had the right to plead the fact that such suit (under this statute) was barred by the lapse of time. The statute was passed for this very purpose. Prior thereto the foreclosure action could have been brought within twenty years—a common law bar.

The statute has no refenence to a possessory action, but is one which bars the right to foreclose a mortgage lien. So that adverse possession is not really an issue under defendant's two counts in which she asks to foreclose the mortgage.

What Seiffert could have done, the plaintiff could do in the present case, unless precluded on some other theory. So that under all theories advanced, we conclude the trial court was right in denying the defendant the right to foreclose her mortgage.

IV.   Nor is there substance in defendant's plea of the ten-year Statute of Limitations. She was never in the possession of this land. True she claimed owner-

**Limitations.** ship after her futile foreclosure in 1896, and has paid taxes thereon, and has attempted or tried to sell the land. This is the utmost of her evidence under this plea. This is not sufficient, and the trial court was right in his judgment on this count.

V. However, with all that we have said above, the equities of this case are with this woman. The pleadings are such as to make the case one of equitable jurisdiction, and whilst the trial court found against her upon that branch of her answer, we are authorized to review this evidence, and reach our own conclusions as to the facts. These facts may be briefly stated. B. R. Richardson, an attorney and abstracter of titles, brought the suit for foreclosure, which appears to have been futile. Defendant in good faith bought at the foreclosure sale and thought she procured title. We say she bought, because Mr. Richardson bought and took title, but, as he ought to have done, as her agent and attorney, he conveyed to her. In law she bought. Mr. Richardson died and the plaintiff Hubbard acquired his business. In going over the papers in Richardson's office he found what is called a "Present Owners List" of property in Morgan County. On that list he found the name of Mrs. Dahlke, showing that Richardson had paid taxes for her. This was in 1901, and thereupon he wrote defendant that he succeded to the business of Mr. Richardson, and would be glad to pay her taxes for her as Mr. Richardson had done. She sent him the money and he paid the taxes. Plaintiff admits writing for this business, but denies that he paid the taxes more than three or four times from 1901 to 1915. Defendant says that he was her agent to pay taxes and to sell the land for her. She said she paid him for his service in paying taxes. That he (or his firm, Hubbard & Kavanaugh) was her agent to sell this land is made clear by a letter of date May 28, 1901. In this letter, among other things, it is said:

> It is impossible for us to close trade on your 120 acres of land here; the party after investigating is afraid of the title, and as Abstractors ourselves we have to admit that your title at present is very bad. However, we know of our own knowledge that you have a good title to an undivided one-half interest in the land, which came to you by J. P. Porth, only heir of Wm. Porth, dead. Now the other one-half interest stands in the name of Thos. B. and C. V. Price, they obtained deed from John Logan's 'Admr. Now if you could get Q. C. Deed from them your title would then pass. The records show that the land was sold for taxes, however judgment was taken against Longan Long after his death, and judgment against dead man for taxes passes no title.

This letter shows that plaintiff was agent to sell in 1901, and defendant claims that he was such agent from thence forward, as well as her agent to pay taxes. This letter also shows that plaintiff was advising the defendant as to the perfection of her title. It likewise indicates that he acquired knowledge of her title whilst acting as her agent, and in a fiduciary capacity.

Now that plaintiff paid taxes for defendant in 1914 is shown by the disinterested proof of the collector. Defendant says the agency, both for paying taxes and selling the property, continued from 1901 on, but that many of her letters were lost in the noted flood in Kansas City, in 1903. What tax receipts she introduced bore evidence of the flood. They did not show that plaintiff always paid the taxes. But on July 19, 1915, is a letter from plaintiff personally which shows that he recognized his agency. The letter reads:

> I wrote you last week in regard to a price on your land in this Morgan Co., Mo., but so far have not heard from you, please let me hear from you at once, I am expecting to make a trip over in that part of the County soon and if I have your price before I go I might be able to make sale of same. This land is quite a distance from here and I do not get over in that part of the County very often. Hoping to hear from you at once.
>
> I am very truly yours,
>
> GEO. H. HUBBARD.

Hubbard says he did not get a price on the land as requested on July 19, 1915, and for that reason

bought the land himself from Seiffert. On August 25, 1915, he wrote Mr. Erhart, the Kansas City agent of the defendant, the following:

Versailles, Mo., Aug. 25th, '15

Mr. F. F. Erhart,
Kansas City, Mo.
Dear Sir:—

I have bought 120 acres of land in this Co.'which Mrs. Emma Dahlke of your City thought she owned and have my deed of record and have taken possession of said land. I had consultation with Mr. A. A. Knoop, 628 Scarritt Bldg., Kansis City, Mo., in regard to the title to this land, and he was the one who told me that you attended to Emma Dahlke's business. I suppose you understand the condition of this title. Mr. Knoop thought I ought to offer her something for a quitclaim deed and by his advice will say that if she will make me a quitclaim deed to this land I will give her $100 in cash for same and will give her until Sept. 1st to accept this offer, if she desires to accept same she may make and execute the deed and send it to the First National Bank of Versailles for collection and I will attend to it at once.

Very truly yours,
GEO. H. HUBBARD.

In other words up to July 19, 1915, the plaintiff recognized the defendant as the owner of the land and was trying to sell it for her. Suddenly he concluded to pay $50 for the title, and disavow his principal. When all this evidence is considered, we think that in equity and good conscience, the plaintiff cannot claim this title. It is reasonably clear that he was the selling agent of defendant from 1901 on to 1915. He says almost as much. What he learned of the title was by reason of this agency. Good conscience will not permit an agent to buy up an outstanding title as against his principal, and assert it against the principal. Plaintiff's only excuse for so doing is, that defendant did not answer his letter of July 19, 1915. Whether she did or did not may be debatable, but this does not go to the root of the matter. He waited only a short time and procured the adverse claim of title, as against his principal. This he secured for $50.

In our judgment, the trial court should have held that, in equity, the title which Hubbard acquired from Seiffert was for the benefit of the defendant, and that he should have decreed title in defendant, upon the condition that she pay to Hubbard what he had been out in procuring the outstanding title. In other words, on the evidence, the trial court was in error in finding against the defendant upon the question of agency between defendant and plaintiff. This result meets with the judgment of good conscience, and ought to be written into the law of this case.

Judgment reversed, with directions to enter up a decree for defendant, conditioned as aforesaid. *Blair, P. J.,* and *Woodson, J.,* concur; *Bond, C. J.,* concurs in paragraph 5 and result.