### HALPERIN v. CALLENDER.

(Supreme Court, Appellate Term, First Department. June 22, 1896.)

BROKERS—COMMISSIONS.

In an action to recover a share of commissions for procuring a loan for one G., it appeared that plaintiff, a broker, being unable to procure the loan, introduced G. to defendant, also a broker, to assist in obtaining the money, and defendant promised to divide the commissions, but he first required plaintiff to obtain from G. a written agreement to pay commissions. Plaintiff obtained a writing to that effect, requiring the loan to be obtained by a certain day, and providing that G. should not be held thereafter. Defendant was not able to procure the loan until several days after the time limited, but G. then refused it, on the ground that the time had run out. About 10 days later, G. applied directly to defendant for a loan, and a new contract was made between them, and defendant thereafter procured the loan. *Held,* that the provision of the first contract for a division of commissions did not apply to the second contract.

Appeal from city court of New York, general term.

Action by William Halperin against William E. Callender to recover a share of commissions paid to defendant by one Goldman for obtaining a loan of $17,000 on a bond and mortgage. Plaintiff's

contention was that defendant agreed to pay him and one Jonas each one-third of the commissions earned in the transaction, and that, relying on this promise, they introduced Goldman to defendant, and devoted considerable time and trouble to consummating the loan. A judgment in favor of plaintiff was affirmed by the city court (38 N. Y. Supp. 970), and defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

A. M. Clute and G. S. Hamlin, for appellant.

M. B. Clarke, for respondent.

McADAM, J. The plaintiff, by his complaint, as amended at the trial, alleged, in effect, that he and defendant, by their joint endeavors, procured a loan for one Frank Goldman, for which the defendant received the sum of $350, and that by an agreement between the parties the defendant was to divide the commissions so received. It appears that the plaintiff, a broker, discovered that Goldman wanted a loan, and, being unable to place it himself, introduced him to the defendant, also a broker, to assist in obtaining the money. The defendant insisted, before making any effort to procure the loan, that the plaintiff should obtain from Goldman an agreement, whereupon the plaintiff obtained a writing in these words:

"October 26, '93.

"I agree to pay (2) two per cent., and legal disbursement, to Wm. Halperin, for securing a loan of $17,000, at 5 per cent., for 3 or 5 years, on No. 1760 Third avenue, New York City, until Oct. 30, '93, 3 p. m.; not to be held thereafter. Mortgage must be transferred. F. Goldman."

The defendant was unable to obtain the loan within the time limited, but, within three or four days thereafter, found he could place it, and told the plaintiff to obtain the abstract of title. The plaintiff was unable to obtain the abstract, and at his request the defendant himself sent to Goldman for it; but Goldman refused to deliver it, and said that the contract had run out, and that he was not bound in any way to Halperin. On December 13th, following, Goldman made an application directly to the defendant for a loan. The defendant told him he had secured the loan once, and was unable to get the papers, and did not want to go into the transaction again. Finally Goldman entered into a new contract, directly with the defendant, as follows:

"I hereby agree to pay W. E. Callender $350, to cover all expenses for procuring loan of $17,000, at 5 per cent., on 1760 Third avenue.

"Dec. 13, '93. F. Goldman."

The defendant thereafter procured the loan, and received the commission.

The question presented is whether the arrangement to divide the commissions, made under the first contract, applied to the second. We think not. All rights and liabilities under the first contract expired, by its terms, October 30, 1893. The plaintiff and defendant ceased on that day to be the brokers of Goldman. He at the same time ceased to be their client, and was at liberty thereafter to make any arrangements he saw fit with either broker. To hold otherwise would be to acknowledge a sort of ownership in the

customer by the broker, which no law can recognize. The plaintiff contends that his agreement with the defendant continued indefinitely, and applied to any loan made to Goldman on the same property, notwithstanding the limitation as to time in the written contract with the owner. We cannot adopt this construction of the agreement. There is no evidence of fraud upon the part of the defendant in making the second contract with Goldman, and the circumstances under which it was made negative any inference that its purpose was to defraud any one. The limitation as to time in the original contract with Goldman was placed there by him before it was delivered to the defendant by the plaintiff, and the agreement to divide commissions had reference to that contract, for there was no other then in existence. The second contract was brought about by Goldman, not by the defendant, and was independent of the first, and on different terms. The first contract having expired, and all efforts under it having, in consequence, been abandoned, Goldman was free to make any new arrangement he pleased; and there was nothing to prevent the defendant from becoming the sole party to it, if he and Goldman were able to come to an understanding. The cases hold that:

"The broker may devote his time and labor, and expend his money, with ever so much of devotion to the interests of the employer; and yet if he fails,—if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated,—he gains no right to commission. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who would otherwise have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to, and materially assist in, the consummation of a sale; he may have planted the very seeds from which others reap the harvest,—but all that gives him no claim." Sibbald v. Iron Co., 83 N. Y. 383; Wylie v. Bank, 61 N. Y. 415; McClave v. Paine, 49 N. Y. 561; Alden v. Earle, 121 N. Y. 688, 24 N. E. 705.

When the plaintiff introduced Goldman to the defendant, he took his chances as to the success of the loan to be procured under the first contract, and when it failed of consummation it left the plaintiff without any claim to compensation in any form. If the defendant had purposely allowed the time to pass, and had then completed the transaction, he could not have deprived the plaintiff of his share of the commission, because the owner would have been held by his act to have waived time, as of the essence of the contract. But that is not this case. The abandonment of the original contract was owing to the refusal of the owner to proceed further, upon the ground that the time specified in the contract had expired; and the matter was effectually put to an end, and was not revived until the owner, six weeks afterwards, of his own volition, called upon the defendant, and induced him to undertake the procuring of the loan on his own account.

It follows that when the defendant entered into the new contract with Goldman, on December 13, 1893, the plaintiff, who was in no manner a party thereto, had no interest whatever in it, and that

what the defendant did thereunder he did on his own account, and for his own benefit. When, at the close of the case, therefore, the defendant moved that a verdict be directed in his favor, on the ground that there was no evidence that the plaintiff had anything to do with the procuring cause of the second loan, the application should have been granted; and the exception to the refusal presents error, for which the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.