# DENNISON & COMPANY, Respondents, v. J. E. ALDRICH, Appellant.

### Kansas City Court of Appeals, December 4, 1905.

1. **EVIDENCE: Varying Written Contract: Parties.** The rule relating to varying the contents of a written instrument by parol evidence applies to the contracting parties and their privies alone, and not to controversies between third persons or between one of the parties and a third person.

2. **PRINCIPAL AND AGENT: Fidelity to Principal: Termination.** The relation between principal and agent is one of trust and the agent is not permitted to use information of advantage gained from his position for his own benefit against the interest of his correlate; nor can he intermeddle on his own account with the subject of his employment, and his termination of the agency will not release him from his accountability.

3. ———: ———: ———. Where the relation between the parties is finally ended, all duty ends and leaves the agent free to serve himself or others, provided he has done nothing during the agency to lay the foundation for his advantage at his principal's expense.

Dennison & Co. v. Aldrich.

4. ——: ——: **Compensation: Accounting.** Certain agents employed an assistant who was to have a per cent of their commission as his compensation. On an accounting such agent was not entitled to expenses paid and assistance hired without authority from his principal.

5. ——: ——: ——: ——. Nor on an accounting where such agent has broken faith with his employers can he retain his one-third as compensation, since he forfeits that by his misconduct.

6. ——: ——: **Evidence.** In a contest between agents and their sub-agent, the latter may prove the existence of a contract between himself and the principal of his employers with the date thereof to show good faith in entering into the contract after the termination of his relations with his former employer.

Appeal from Jasper Circuit Court.—*Hon. Hugh C. Dabbs,* Judge.

AFFIRMED.

*A. E. Spencer, C. V. Buckley* and *Thomas & Hackney* for appellant.

(1) The contracts of option given by the owners to plaintiffs were complete in their terms, and the court was right in excluding oral evidence of the negotiations leading up to their execution. These negotiations are conclusively presumed to be merged in writing. McClurg v. Whitney, 82 Mo. App. 625; Howard v. Scott, 98 Mo. App. 509; Ins. Co. v. Buchalter, 83 Mo. App. 504; Tufts v. Morgan, 87 Mo. App. 98; Blake Mfg. Co. v. Jaeger, 81 Mo. App. 239. (2) The general rule is, that no verbal agreements between the parties to a written contract, made before or at the time of the execution of such contract, are admissible to vary its terms or affect its construction. All such verbal agreements are considered as merged in the written contract. 1 Beach Mod. Contracts (1 Ed.), page 688, sec. 579. (3) It was competent for the defendant to show that the sale was not made through the instrumentality of plaintiffs nor within the life of nor under their options, but was made

through the instrumentality of a third party and with new incidents. Beauchamp v. Higgins, 20 Mo. App. 514-518; LaForce v. Washington University, 106 Mo. App. 524. (4) The court did not commit error in giving or refusing instructions. The only right plaintiffs had to any compensation was dependent upon bringing about a sale within the time limited. Page v. Griffin, 71 Mo. App. 524; Stinde v. Blesch, 42 Mo. App. 578; Beauchamp v. Higgins, 20 Mo. App. 514; La Force v. Washington University, 106 Mo. App. 524; Fultz v. Wimer, 34 Kas. 576; Halperin v. Callender, 39 N. Y. Supp. 1044. (5) The plaintiffs having thus adopted this theory of the case and asked this instruction submitting that issue to the jury, cannot now be heard to complain in this court of the giving of the instructions by the court, either of its own motion or for defendant, embodying the same theory. Holmes v. Braidwood, 82 Mo. 610; Noble v. Blount, 77 Mo. 235; Berkson v. Ry., 144 Mo. 220; Dunlap v. Griffith, 146 Mo. 292; Hogan v. Brady, 155 Mo. 670; Thorpe v. Ry., 89 Mo. 650; Marks v. Davis, 72 Mo. App. 564; Drug Co. v. Self, 77 Mo. App. 289; Phelps v. City of Salisbury, 161 Mo. 1.

*George Hubbert* and *O. L. Cravens* for respondents.

(1) The defendant is liable upon the established facts in this case to plaintiff for the money sued for, upon the ground that his acts in procuring the money must be attributed by the law to his performance of his trust obligations to plaintiffs, which he was not at liberty to throw off and disregard. Trice v. Comstock, 121 Fed., 620; Davis v. Hamlin, 108 Ill. 393, 48 Am. Rep. 541; Grumley v. Webb, 44 Mo. 454, 10 Am. Dec. 304; Eoff v. Irvine, 108 Mo. 383, 32 Am. St. 609; Gardner v. Ogden, 78 Am. D. 192; White & Tud. Lea. Cas. (3 Am. Ed.), 91-7; Winn v. Dillon, 28 Miss., 294-5; People v. Twp. Bd., 11 Mich. 222-5; Lockhart v. Rollins (Idaho), 21 Pac. 413; Tisdale v. Tisdale, 64 Am. Dec. 775; McKin-

ley v. Williams, 74 Fed. 94-5; Ins. Co. v. Smith, 117 Mo. 261; 38 A. St. 656; Gower v. Andrews, 59 Cal. 119. (2) It seems equally clear that defendant has forfeited his part of the commission by reason of his misconduct, after entering the employ of plaintiffs, by resorting to McDonald and secretly procuring him to secure the option from under plaintiffs and against their interests, and then acting adversely to plaintiffs under McDonald's employment and effecting a sale; and, when the sale was made, collecting a $4,000 commission and denying the rights of plaintiffs to the same. Trice v. Comstock, 121 Fed. 620; 23 Am. and Eng. Ency. Law (2 Ed.), 921; 12 Am. and Eng. Ency. Law (2 Ed.), 671; 1 Am. and Eng. Ency. Law (2 Ed.), 1102; Brock v. Hart, 57 Mo. App. 610; Mec. on Agency, sec. 1027; Paul v. Minneapolis Co., 87 Mo. App. 654. (3) It was not the lawful privilege of Aldrich to turn about, after being in the service of the plaintiffs, and dispute their right to represent the land-owners concerning the very subject of his employment. An agent may not deny the title of his principal to the subject-matter of the agency. 1 Am. and Eng. Enc. Law (2 Ed.), 1091; Collins v. Tillou's Admr., 68 Am. Dec. 398; Whitman v. Felton, 28 Mo. 601; Whar. Agen., sec. 242; Mech. Agen., sec. 526; Vette v. Geist, 155 Mo. 34. (4) As suggested in our preliminary statement, this action for money had and received, under a trust beginning in agency, is peculiarly adapted to get to the bottom of such a transaction. And to make the remedy available and effective, the courts will not allow themselves to be restrained by narrow rules or hair-splitting distinctions in the matter of pleading. Our petition covers the case. Cooley on Torts (2 Ed.), 526, 615; 2 Grl'f on Evi., sec. 117; Deal v. Bank, 79 Mo. App. 262; Johnson v. Bank, 116 Mo. 568. (5) The circuit court had erred in its rulings admitting, as a defense below, the facts pertaining to the collateral and fraudulent scheme, between Aldrich and McDonald, to cheat plaintiffs out of the sale and their commission. Day v. Por-

ter, 161 Ill. 235, 43 N. E. 1073; Goldsmith v. Cook, 13 N. Y. Supp. 378; Folinsbee v. Sawyer, 28 N. Y. Supp. 678; Veozie v. Parker, 72 Me. 443; Crone v. Company, 85 Mo. App. 601; Lipscomb v. Cole, 81 Mo. App. 53; Cunliff v. Hausman, 97 Mo. App. 467; Leech v. Clemons, 59 Pac. 230. (6) The rule excluding parol testimony from adding to a written memorandum, or even contract, does not apply to collateral agreements, whether about lateral matters or with third persons. Here the only contract in direct issue, is the one between plaintiffs and defendants. The contract between plaintiff and the landowners was collateral in a double sense, and belongs to both the classes above mentioned. So, for double reasons the court was wrong in excluding oral evidence as it did. 1 Grlf. Ev., 279; McMaster v. Ins. Co., 14 Am. Rep. 239; Bruce v. Roper Co., 24 Am. St. 657; Brown, Parol Ev., sec. 28; Condict v. Cowdry, 123 N. Y. 463, 25 N. E. 946.

JOHNSON, J.—Plaintiffs sued defendant, as their agent, to recover the sum of four thousand dollars, received by the latter as a commission for the sale of some mining property in Jasper county. It is claimed defendant obtained the money as the fiduciary of plaintiffs, and then repudiated his obligation to them to account for it. The trial resulted in a judgment for defendant. A motion for a new trial was filed by plaintiffs, and upon hearing, sustained by the trial judge, who assigned the following reasons for his action: "That the court erred in giving instructions for defendant, and in refusing instructions asked for by plaintiffs, in modifying instructions asked by plaintiffs, and giving instructions on the court's own motion, and because the court erred in admitting incompetent and irrelevant evidence on the part of defendant, and rejected competent and legal evidence offered by plaintiffs." Defendant, after unsuccessfully moving for an order to set aside that sustaining the motion for a new trial, brought the case here up-

on appeal. The scope of the issues presented by the pleadings is comprehensive of any right of recovery in plaintiffs, either under the evidence admitted, or that offered but improperly excluded, and therefore, we will not refer to the specific averments of the petition, but will determine the questions of law arising from the facts appearing in the evidence before us.

Plaintiffs were partners, engaged at Joplin in the business of dealing in real estate as agents for buyer or seller. Defendants also followed the same vocation. Clinton C. Carrick owned certain mining property which he desired to sell for the price of $16,000. The C. C. & McDonald Mining Company, of which Ed. F. McDonald was a member and spokesman, owned a mining lease upon a portion of the Carrick land, and was engaged in conducting mining operations thereon. The company desired to sell its lease and equipments, pricing it at $6,000.

According to the testimony of plaintiffs, Carrick and McDonald, on May 16, 1903, employed plaintiffs to act as agents of the owners of the land and the leasehold in the procurement of a buyer to purchase the entire property at a sum that would realize $22,000 for the owners, of which Carrick was to have $16,000, and the C. C. & McDonald Mining Company $6,000. Plaintiffs were to have the excess of the purchase money over $22,000 as their commission. The employment was to end on June 1st following, but with the understanding that it would be extended if plaintiffs were then in a fair way to procure a purchaser. To aid plaintiffs in their efforts, by investing them with an *indicia* of authority, as well as to protect them in their right to the benefit agreed upon in case a sale was made, what are termed option contracts were written and delivered to plaintiffs, under the terms of which plaintiffs were given the right to purchase all the property for the aggregate sum of $22,000, provided they exercised that right by

114 app—45

June 1st. Plaintiffs contend these written instruments did not, in fact, contain the real agreement made by the parties, but as stated, were considered as a token of authority as well as a written acknowledgment of · their right to retain the proceeds of a possible sale in excess of the sum mentioned. Plaintiffs further say that a few days after their employment they engaged the services of defendant to assist them in finding a purchaser, disclosed to him the terms of the actual agreement between them and the owners, and agreed to give him one-third of any commission earned by them, even in case defendant's efforts were not instrumental in initiating or consummating the sale; that defendant accepted employment upon these terms, and thereafter, until within a few days of the sale made, apparently exerted himself as their agent, and co-operated and advised with them; that on June 1st, no sale being made, they procured from the owners a verbal agreement to extend the employment until June 15th, and on the latter date obtained another extension, and thereafter others, the last one of which expired on July 31st; so that from May 16th until July 31st, plaintiffs were, without interruption, in the employment of the owners under the terms of the first agreement; that during this period, on July 28th, the owners, through the services of defendant, sold the property for $29,000, of which Carrick received $16,000, the C. C. & McDonald Company $7,000, and the remainder of $6,000 was paid as agent's commission to Ed. F. McDonald and defendant, who divided the money on the basis of one-third to McDonald and two-thirds to defendant. When plaintiffs learned of the sale they demanded of defendant two-thirds of the amount received by him, and upon his refusal to comply, brought this suit.

Defendant in his testimony admitted his employment by plaintiffs, and his collaboration with them to effect a sale, but insists (and in this is supported by the testimony of the owners) that no extension of plaintiffs' option was granted after June 1st, and that plaintiffs'

relation with the owners ceased on June 15th. He further says that a few days before June 27th, he notified plaintiffs that his employment under them was at an end. On the last mentioned date, McDonald, at the suggestion of defendant, procured from Carrick an agreement in writing, giving him the option to purchase the land for $16,000, and the evidence is convincing that an agreement was then made between defendant and McDonald, under which the property of the McDonald company was put into the deal at $7,000, and defendant and McDonald were to divide the commission realized from the sale in the proportion of two-thirds to the former and one-third to the latter. The making of an agreement of this character is not in words conceded by defendant and McDonald, but the facts admitted and proven strongly support the inference that such is the case. Defendant admits that he and McDonald were paid $6,000 as commission, and of this he received $4,000, but claims that in making the sale he was not acting as plaintiffs' agent; that he was compelled to pay various sums to others who assisted him, and that the total of such disbursements reduced his actual compensation to some $1,700.

Defendant objected to the introduction of evidence offered by plaintiffs touching their verbal agreements with the owners that preceded or were contemporaneous with the written options, on the ground that these instruments purported to express the contract made between the parties, and could not be contradicted nor varied by such oral agreements. The court admitted the evidence, but before the submission of the case withdrew it from the consideration of the jury. The cause of action here asserted is founded upon a contract between plaintiffs and defendant, and not upon the option agreements between plaintiffs and the owners of the property. Assuming, for argument, that these written options purported to express the entire contract made by the parties to them, and therefore absorbed to extinguishment all contemporaneous and antecedent verbal agreements the

right to assert such integration inures to the contracting parties and their privies alone, and does not apply to controversies between third persons, or between one of the parties and a third person. [Brown on Parol Evidence, 31, and authorities cited; Greenleaf on Evidence, sec. 279.] The evidence was admissible and it was error to exclude it.

The instructions given by the court evidently are based upon a misconception of the principles controlling the relation of principal and agent. In effect, the jury was told that defendant during the continuance of plaintiffs right to sell the property under their contract with the owners, could, by the termination of his employment under plaintiffs, absolve himself from all duty to them, and, by making an independent contract with the owners, enter into competition with them for the sale of the property. The relation of principal and agent is one of trust and confidence analogous to that of trustee and *cestui que trust,* client and attorney, and employer and employee. A person acting in a fiduciary capacity is not permitted to use the information or advantage gained through his position for his own benefit and against the interest of his correlate. He must be faithful to his trust and to guard against faithlessness is not allowed to intermeddle on his own account with the subject of his employment so long as the one for whom he is employed to act has any right or interest in the matter. If he does interfere, the fact of the prior termination of his employment will not release him from accountability. His trusteeship cannot thus be cast off. If defendant accepted employment from plaintiffs to aid them in selling the property, he should have done nothing at any time to disturb their relations with their principals, and he could not accept employment from the owners for himself until after plaintiffs' employment was finally ended. It is not indispensable to plaintiffs' right to recover that the continuation of their employment to the date of the sale of the property be found. If it existed at the time de-

fendant began to negotiate the contract with the owners for himself, which he succeeded in procuring on June 27th, plaintiffs should recover. In such case defendant's bad faith in undermining his principals would bind him to them and give to them the fruits of his faithless acts. [Trice v. Comstock, 121 Fed. 620; Paul v. Machine Company, 87 Mo. App. 647; Eoff v. Irvine, 108 Mo. 378; Life Ins. Co. v. Smith, 117 Mo. 261; Mechem on Agency, secs. 455, 456; 2 Sugden on Vendors, 406 et seq.; Grumley v. Webb, 44 Mo. 444.]

On the other hand, if, as defendant contends, the relation of plaintiffs to the owners was finally ended on June 15th, and until after that date he made no effort to seek employment direct from the owners, nor gave willing ear to proposals from McDonald, then in such case plaintiffs would have no cause of action. While as stated, good faith requires a fiduciary to serve alone the interest of his correlate in the subject of the employment, the termination of such interest ends all duty, and leaves him free to serve himself or others, provided he has done nothing during the continuance of such interest to lay the foundation for future advantage to himself at the expense of his principal's rights. , [Halferin v. Collender, 39 N. Y. Supp. 1044; LaForce v. Washington University, 106 Mo. App. 517; Beauchamp v. Higgins, 20 Mo. App. 514.]

It is claimed by plaintiffs that if they are entitled to recover, the measure of their recovery is the full sum of $4,000, the amount received by defendant as commission; while defendant insists that in no event should he be held liable for more than two-thirds of the amount actually realized by him, after paying others for their services in assisting him to make a sale. We agree with the contention of plaintiffs. It is not claimed that defendant had any authority from them to employ assistance, nor that they in any manner ratified his acts in that particular. Therefore, all such obligations were

incurred by defendant upon his own responsibility, and plaintiffs should not be charged with them.

Nor should defendant be allowed the commission of one-third provided in his contract with plaintiffs. In the case of Paul v. Machine Company, 87 Mo. App. 1. c. 654, this court, speaking through BROADDUS, J., said: "There are many authorities to the effect that fraud or misconduct upon the part of the agent forfeits his right to compensation for his services. In fact, none have been called to our attention asserting a contrary doctrine." [Trice v. Comstock, supra; Smith v. Crews, 2 Mo. App. 269; Brack v. Com. Co., 57 Mo. App. 605; Mechem on Agency, 1027.] We are satisfied with the correctness of this rule and with its applicability to the case before us. Defendant, under his employment by plaintiffs, was to receive his pay from them out of their commission. If plaintiffs are right in their statement of facts the commission received by defendant was at their option to be treated as their money earned by defendant upon their account, and he has forfeited his right to compensation from them because of his infidelity to their interest, and his repudiation of their demand for an accounting.

It appears that in ruling upon the motion for a new trial the learned trial judge concluded he had committed error in permitting defendant to introduce evidence to prove his contractual relation with the owners which originated on June 27th. This evidence is admissible under defendant's contention that he acted in good faith and did nothing upon his own account until after the termination of plaintiffs' interest. In meeting the issues raised by his adversaries he has the right to show the actual relation sustained by him to the owners under which he acted in making the sale.

The errors noted justified the sustaining of a motion for a new trial, and the order is affirmed. All concur.