STATE OF MISSOURI, at the Relation of JEROME F. DUGGAN, Trustee in Reorganization of the CHRISTOPHER ENGINEERING COMPANY, a Corporation, in a Proceeding for Corporate Reorganization in the United States District Court for the Eastern District of Missouri, Relator, v. ROBERT J. KIRKWOOD, Judge of the Circuit Court for the City of St. Louis.—No. 40260.—204 S. W. (2d) 307.

Court en Banc, August 18, 1947.

*James T. Blair, Jr., Geo. O. Durham* and *B. Sherman Landau* for relator.

*Walter N. Davis, Max Sigoloff* and *Myron L. Silver* for respondent.

LEEDY, J.—Original proceeding in mandamus to compel the respondent judge to permit intervention in a cause pending before him brought by Max and Hascal Schneider, doing business as "Seco-Lite Manufacturing Co.," plaintiffs, v. Phil Magidson, defendant, #87374, herein referred to as the main case.

The following facts, in briefest summary, appear from the record in the instant proceeding: The main case was brought under the Declaratory Judgment Act to ascertain and declare the respective rights, duties, and obligations of Seco-Lite and Magidson under their contract of July 1943,[1] and to determine that, by reason of Magidson's alleged violations of that contract, he is entitled to receive nothing from the profits thereunder. Magidson's answer alleges the agreement was one of joint adventure under which he is entitled to large sums as his share of the earnings. He prayed for an accounting, and for judgment for 50% of the profits thus ascertained, and for $25,000.00 additional as punitive damages for fraud and deceit. Prior to the filing of the answer, Magidson had moved for the appointment of a receiver for Seco-Lite, and, by agreement, and lieu of such appointment, Seco-Lite deposited with the registry of the court, the sum of $90,000.00. Such was the status of the case when, 17 months after its institution and one week before the date set for trial, relator, as Trustee in Reorganization of Christopher Engineering Co., a corporation, sought to intervene. He was authorized so to do by the Federal Court in Christopher's corporate reorganization proceeding, and, for such purpose, he duly complied with the procedure prescribed by Sec. 21 (c) (1) of the Civil Code, Sec. 847.21 (c) (1) Mo. R. S. A.

Relator claimed, in seeking to intervene in the trial court, and claims here, that he is equitably entitled to recover Magidson's share of the proceeds of the contract involved in the main case, and that he has a direct interest in the accounting and liquidation thereof, and that he will be bound by the result of that accounting. This claim grows out of these alleged facts: That Christopher Engineering Co.,

---

[1]Whereby Magidson agreed to secure contracts and orders for Seco-Lite for certain items (aileron hinge brackets and airplane bolts) to be manufactured by Seco-Lite, and to engineer the tooling and supervise the manufacturing of those products, the profits to be shared equally by the parties.

Inc., had a written contract with Magidson dated July 1, 1942, whereby Magidson agreed to devote all his time, skill, ability, and services to the interests of Christopher for a period of two years from July 1, 1942, and wherein it was further agreed that Magidson would:

"Well and faithfully perform all the duties of said employment with skill and fidelity and that he will not willfully neglect nor depart from said service or employment, nor do, suffer, or consent to the doing of any act or thing detrimental to the interests of said first parties, [Christopher] and will, during the continuance of said employment, render to them his best ability, knowledge and skill;

"During the term of this employment . . . not, directly or indirectly, engage in like or similar employment on his own behalf or on behalf of any other person and neither during the term of this employment nor thereafter will he disclose to any person or persons, except by the consent of the first party, any information or knowledge of matters and things acquired, directly or indirectly, by him as a result of or in the course of his said employment concerning the business of the first party or that of any of first party's clients or employers, nor will he, without such consent, appropriate, use or employ to his own advantage or the advantage of others, either directly or indirectly, any of such information or knowledge;

"Not, within a term of two years subsequent to the termination of the employment ▓▓▓ provided for herein, whether the same be terminated by expiration of the term provided, or otherwise, directly or indirectly accept employment from any client or employer of the first party or prospective client or employer of the first party, knowledge of which relationship or prospective relationship came to him, directly or indirectly, in the course of his employment, nor will second party, [Magidson] during said period, accept employment from, or associate himself with, or employ any other person, now or hereafter employed by or associated with first party, to the end of undertaking or carrying on a like or competitive business."

Relator further alleges that at the time in question, Christopher was engaged in tooling, manufacturing and selling aircraft and aircraft parts, supplies and equipment, including aileron hinge brackets and aircraft bolts; that Magidson, entered upon his employment under the contract, and acquired knowledge of the business of Christopher, and the business of its clients and customers; that Seco-Lite on or about July 15, 1943, entered into the business of tooling, manufacturing and selling the same products as Christopher, including aileron hinge brackets and airplane bolts; that on or about the date last mentioned Magidson, in violation of his agreement with Christopher, entered into the contract with Seco-Lite to secure sales contracts, engineer tooling, and supervise and assist with the manufacture of Seco-Lite's products; that Magidson used the knowledge acquired by him through his employment with Christopher to secure the contract with

Seco-Lite; that he wrongfully and improperly, without the consent of Christopher, and in violation of his agreement with Christopher, used the information and knowledge he acquired concerning Christopher's business to secure customers for Seco-Lite, and for the further purpose of engineering the tooling and manufacture of aircraft parts and equipment for Seco-Lite; that through such improper and wrongful acts and conduct, Magidson claims the $90,000.00 in the registry of the court; that defendant Magidson has denied intervenor's rights with respect to the proceeds of said contract, is insolvent and proposes to liquidate said contract and convert the proceeds thereof to his own use, as a result of all of which the intervenor is without any adequate remedy at law.

Intervention was opposed by the defendant Magidson, resulting in an order of denial by the respondent judge. Relator then filed notice of appeal, and subsequently applied for, and was granted, our alternative writ of mandamus. To the alternative writ, respondent filed return in which he admitted certain allegations of the alternative writ, denied others, and set up certain affirmative matter by way of record facts appearing in the corporate reorganization proceeding in the Federal Court, and in a prior proceeding against Christopher Engineering Co., in the circuit court to show that Christopher's business was limited to "tool designing (and not manufacturing and selling as alleged by relator), and, hence, there could have been no breach by competing with Christopher in the manufacture and selling of the hinge brackets and airplane bolts; that, moreover, Christopher had been disabled by the proceedings mentioned from performing its part of the contract, and had breached the same prior to its expiration date, and it was unenforceable.

Relator's *brief* attacks as irrelevant that portion of the return of which these allegations are a part, saying "Our first inclination was to await the respondent's brief and see what use he proposed to make of such irrelevant allegations. We can see no possible purpose for the allegations nor why they were made except on the remote possibility that they might prejudice the case. . . . But all the allegations referred to are irrelevant and have no place in this proceeding." The return was the last pleading filed, so that we have neither motion for judgment on the pleadings, request for the appointment of a commissioner, nor agreed facts. The case is simply not at issue, and hence the numerous questions briefed cannot be determined in this state of the record. We would be justified in discharging the alternative writ, and dismissing the proceeding for failure to comply with Sec. 1697 R. S. '39 and Mo. R. S. A., as was done in State ex rel. Stueve v. Reynolds, 266 Mo. 12, 178 S. W. 468; but, in the exercise of our discretion, we set aside the submission as premature, and order the cause returned to the general docket. All concur.