STATE OF MISSOURI, EX REL. JEROME F. DUGGAN, Trustee in Reorganization of the CHRISTOPHER ENGINEERING COMPANY, a Corporation, in a Proceeding for Corporate Reorganization in the United States District Court for the Eastern District of Missouri, Relator, v. ROBERT J. KIRKWOOD, Judge of the Circuit Court for the City of St. Louis.—No. 40260.—208 S. W. (2d) 257.

Court en Banc, January 12, 1948.

Rehearing Denied, February 9, 1948.

326

*James T. Blair, Jr., Geo. O. Durham* and *B. Sherman Landau* for relator.

*Walter N. Davis, Max Sigoloff* and *Myron L. Silver* for respondent.

330

[258] TIPTON, C. J.—The first submission of this case was set aside by this court because it was not at issue. 204 S. W. 2d 307. A motion for judgment on the pleadings was filed by relator and the cause was reargued. It is an original proceeding in mandamus to compel the respondent, a judge of the circuit court of the city of St. Louis, to permit intervention in the case of Max and Hascal Schneider, doing business as Seco-Lite Manufacturing Company, Plaintiffs, v. Phil Magidson, Defendant, No. 87374.

Many issues are made by the pleadings in this mandamus action. Some deal with relator's right of intervention and many with the merits of relator's action against defendant, Phil Magidson. We are interested only in the issues that involve relator's right to intervene. The facts on these issues are as follows: Case No. 87374 is a declaratory judgment action to ascertain and declare the respective rights, duties and obligations of Seco-Lite and Magidson under their contract executed in July, 1943. Under this contract Magidson agreed to secure contracts and orders for Seco-Lite for aileron hinge brackets and airplane bolts to be manufactured by Seco-Lite, and to engineer the tooling and supervise the manufacturing of those products, the profits to be shared equally by the parties. Seco-Lite alleged that

Magidson violated that contract and for that reason he is not entitled to receive anything from the profits thereunder. Magidson's answer alleged that the agreement was one of joint adventure under which he is entitled to one-half of the profits. He prayed for an accounting and for judgment of 50 per cent of the profits thus ascertained, and for $25,000 additional as punitive damages for fraud and deceit. Prior to the filing of the answer Magidson had moved for the appointment of a receiver for Seco-Lite and, by agreement and in lieu of such appointment, Seco-Lite deposited with the registry of the court the sum of $90,000. That case had been pending seventeen months, and a week before the case was set for trial relator sought to intervene. Relator was Trustee in Reorganization of Christopher Engineering Company, a corporation. He was authorized to intervene by the federal court in Christopher's reorganization proceeding and, for such purpose, he duly complied with the procedure prescribed by Sec. 21 (c) (1) of the Civil Code, Sec. 847.21 (c) (1), Mo. R. S. A.

Relator bases his right to intervene upon the contention that whatever amount the trial court determines is due Magidson in the Seco-Lite case lawfully and equitably belongs to the relator and, therefore, he has a direct interest in the accounting and liquidation thereof, and will be bound by the result of that accounting. This claim is based upon these alleged facts: That the Christopher Engineering Company had a written contract with Magidson dated July 1, 1942, whereby Magidson agreed to devote all of his time, skill, ability and services to the interest of Christopher for a period of two years and wherein it was further agreed that Magidson would:

"Well and faithfully perform all the duties of said employment with skill and fidelity [259] and that he will not willfully neglect nor depart from said service or employment, nor do, suffer, or consent to the doing of any act or thing detrimental to the interests of said first parties, [Christopher] and will, during the continuance of said employment, render to them his best ability, knowledge and skill;

"During the term of this employment . . . not, directly or indirectly, engage in like or similar employment on his own behalf or on behalf of any other person and neither during the term of this employment nor thereafter will he disclose to any person or persons, except by the consent of the first party, any information or knowledge of matters and things acquired, directly or indirectly, by him as a result of or in the course of his said employment concerning the business of the first party or that of any of first party's clients or employers, nor will he, without such consent, appropriate, use or employ to his own advantage or the advantage of others, either directly or indirectly, any of such information or knowledge;

"Not, within a term of two years subsequent to the termination of the employment provided for herein, whether the same be terminated by expiration of the term provided, or otherwise, directly or indirectly accept employment from any client or employer of the first party or prospective client or employer of the first party, knowledge of which relationship or prospective relationship came to him, directly or indirectly, in the course of his employment, nor will second party, [Magidson] during said period, accept employment from, or associate himself with, or employ any other person, now or hereafter employed by or associated with first party, to the end of undertaking or carrying on a like or competitive business."

Relator further states that at the time in question Christopher was engaged in tooling, manufacturing and selling aircraft and aircraft parts, supplies and equipment, including aileron hinge brackets and aircraft bolts; that Magidson entered upon his employment under the contract and acquired knowledge of the business of Christopher and the business of its clients and customers; that Seco-Lite, on or about July 15, 1943, entered into the business of tooling, manufacturing and selling the same products as Christopher, including aileron hinge brackets and airplane bolts; that on or about the same date Magidson, in violation of his agreement with Christopher, entered into a contract with Seco-Lite to secure sales contracts, engineer tooling, and supervise and assist with the manufacture of Seco-Lite's products; that Magidson used the knowledge acquired through his employment with Christopher to secure the contract with Seco-Lite; that he wrongfully and improperly, and without the consent of Christopher, and in violation of his agreement with Christopher, used the information and knowledge he acquired concerning Christopher's business to secure customers for Seco-Lite, and for the further purpose of engineering the tooling and manufacture of aircraft parts and equipment for Seco-Lite; that through such improper and wrongful acts and conduct, Magidson claims the $90,000 in the registry of the court; that Magidson has denied relator's rights with respect to the proceeds of the contract, and proposes to liquidate said contract and convert the proceeds thereof to his own use, as a result of all of which relator is without any adequate remedy at law.

Intervention was opposed by Magidson, resulting in an order of denial by the respondent. Relator then filed notice of appeal, and subsequently applied for and was granted our alternative writ of mandamus.

In the case of Trice et al. v. Comstock et al., 121 Fed. 620, l. c. 622, 623 and 627, Judge Sanborn, speaking for the Circuit Court of Appeals, Eighth Circuit, said:

"For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary rela-

tion, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges [260] the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services.''

''And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and cestui que trust, principal and agent, client and attorney, employer and an employe, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation.''

''The rule upon this subject was clearly and not too broadly stated in the American note to Keech v. Sandford, 1 White & T. Lead Cas. in Eq. (4th Am. Ed.), p. 62, *page 58, in these words: 'Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.' The facts of the case in hand brought it squarely within this rule, charged the title which the agent Comstock acquired with a constructive trust for the benefit of his principals, and furnished substantial ground for their application to a court of equity for appropriate relief.''

In the case of Harrison v. Craven, 188 Mo. 590, l. c. 608-609, 87 S. W. 962, we said:

''Assuming the fiduciary relation resulting from the contract of agency, it is elementary law, not needing fortification by citation of authority, that an agent may not speculate off of his principal in the subject-matter of his employment, that he may not place himself in a situation where self-interest impels him to overreach his principal, that he may not seize benefits with both hands, coming as well as going, and further that a court of conscience, when a trust results from such wrongful conduct, will stretch forth its arm and strip him of all benefits acquired at the expense of his principal and which should enure to the principal's advantage under the terms of the employment.''

In the case of Murdoch v. Milner, 84 Mo. 96, l. c. 102-103, we said:

''The facts thus disclosed by the evidence brings plaintiff's case within the operation of the principle that in all cases where a person is actually or constructively an agent for another, all profits and

advantages made by him in the business beyond his ordinary compensation is to be for the benefit of his employer.''

In the case of Holt v. Joseph F. Dickmann Real Estate Co., 140 S. W. 2d 59, l. c. 64, the St. Louis Court of Appeals said:

''An agent is not allowed to put himself in a position antagonistic to his principal, or speculate in the subject of the agency. The most open, ingenuous, and disinterested dealing is required of him. If he secretly purchases the subject of the agency through a straw party and sells it for a profit, he must account to his principal for the profit. This is so not because of any peculiar implication of fraud, but because it is against public policy to permit the agent to retain the profits thus procured, since this would invite or induce the commission of fraud.''

In Jackson v. Smith et al., 254 U. S. 586, the receiver of a building and loan company agreed with his lawyer and a third party that the third party would bid on property that was being foreclosed by a trustee in a deed of trust, which deed of trust was given to secure a note owned by the building and loan company. There was no evidence that the trustee's sale was not conducted fairly and openly, but the Supreme Court of the United States held that under these facts the trustee violated his obligation as a fiduciary, thereby rendering him and his associates jointly and severally liable to the trust estate for all profits resulting from the purchase.

Under the above authorities there can be no doubt that if Magidson were in the employ of Christopher as alleged by relator, then he stood in a fiduciary relationship with his employer, the Christopher [261] Engineering Company. Under these conditions, as an employe, he would be governed by the same principles of law as if he were a trustee for Christopher. Trice v. Comstock, supra; Dennison & Co. v. Aldrich, 114 Mo. App. 700, 91 S. W. 1024. If he used the information concerning the business of Christopher acquired while in its employ while working for Seco-Lite, contrary to the terms of his employment, then whatever profits he made with the latter company equitably belong to relator as trustee for Christopher. Therefore, whatever sum is determined to be due Magidson by an accounting in the case of Seco-Lite v. Magidson would in equity be held by him as trustee for relator. Of course, we are not passing on the merits of the controversy between relator and Magidson. That can only be done after a trial in the proper court. It may be that relator cannot prove his allegation, but he is entitled to a trial of them.

Relator bases his right to maintain this action to compel the respondent to permit him to intervene upon paragraph (a) of section 21 of the new Civil Code (847.21 R. S. A.). It reads: ''(a) Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by

existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof.''

Prior to the new code there was no general statute in Missouri. Particular statutes did exist authorizing intervention in specific proceedings.

''Intervention as a matter of right is covered by paragraph (a). It incorporates the other intervention statutes giving such absolute right thus continunig the prior law. It gives an unconditional right to intervene when the representation of the applicant's interest by existing parties 'is or may be' inadequate and the applicant 'is or may be' bound by a judgment in the action. Intervention under this provision is now made an absolute right which was, in part, discretionary prior. Paragraph (a) also gives an unconditional right to intervene when applicant may be adversely affected by a distribution or other disposition of property in the custody of the court or of a court officer. This but continues the prior nonstatutory law, as for example in receiverships, but with particular emphasis upon the absolute right to intervene.'' Carr Missouri Civil Procedure, Vol. 1, Sec. 70, page 226.

''It is submitted that code Section 21 should be construed liberally to permit broad intervention. This is in accord with the spirit of the code.'' Carr Missouri Civil Procedure, Vol. 1, Sec. 70, page 227.

Since paragraph (a) of section 21, supra, gives an absolute right to intervene to a person who brings himself within the terms of this paragraph, the trial court has no discretion in the matter. If a trial court should wrongfully deny a person application to intervene, the court can be compelled to permit intervention. The applicant having a legal right to intervene but denied this right by the trial court, mandamus is the proper remedy to afford relief to the applicant.

We have already held that relator has presented a state of facts showing that whatever sum of money is due Magidson in the accounting in the Seco-Lite case equitably belongs to relator. Under these facts relator may not be adequately represented by Magidson in the Seco-Lite case. Magidson's interest is adverse to relator. Magidson could settle his claim with Seco-Lite for a far less sum than he might be entitled to if that case were tried on the merits. Also relator would be bound by the amount of recovery that Magidson obtains in the Seco-Lite case, this for the reason that the amount recovered by Magidson would show the profits he illegally made by breaching his contract with Christopher. The authorities quoted above hold that whenever an agent or employe violates his fiduciary relationship with his principal or employer and obtains a profit thereby, the profit equitably belongs to his principal or employer.

For instance, if upon trial of that case it is found that Magidson is not [262] entitled to any recovery, relator would be bound by that judgment. Relator has elected to pursue his equitable remedy for Magidson's breach of his contract with Christopher. Having made his election, relator may not be adequately represented by Magidson and he may be bound by the judgment Magidson obtains in the Seco-Lite case. This brings relator within provision (2) of paragraph (a) of section 21, supra.

Under these circumstances we think that relator would also come within provision (3) of that paragraph which provides that an applicant may be permitted to intervene "when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." This for the reason that if the sum found due Magidson equitably belongs to relator, relator would be adversely affected by the distribution to Magidson of any part of the $90,000 in custody of the court.

Respondent contends that relator's application to intervene was not timely made and should be denied for that reason. Section 21 (a) does say "upon timely application anyone shall be permitted to intervene in an action." Respondent's order denying relator's application was not based upon the fact that it was not timely made, but on other grounds.

In the case of Innis, Speiden & Co. et al. (Brogdex Co. of California, Limited, Intervener) v. Food Machinery Corporation, 2 Federal Rules Decision 261, l. c. 265, the court had before it the federal section of the code for intervention, Section 24 (a), which on this point is identical with our Section 21 (a). In holding the application timely, the court said:

"I cannot conclude upon consideration of all the circumstances that the application for intervention is not timely. While the case is nearly four years old it was not set for trial until the day upon which the application for intervention was made."

In the case at bar, the Seco-Lite Company filed its petition on June 1, 1945. The defendant, Magidson, did not file his motion to appoint a receiver, until April 9, 1946. That case was set for trial on November 12, 1946, and relator's application to intervene was filed on November 6, 1946.

There is no showing that the position of the parties to the original suit was changed to their detriment by filing the application for intervention. Zeitinger et al. v. Hargadine-McKittrick Dry Goods Co. (Houts, Intervener), 298 Mo. 461, 250 S. W. 913.

We hold, therefore, that intervention cannot be denied upon the ground that the application was not timely.

Respondent contends that to allow relator to intervene would deprive him of his constitutional right to a trial by jury. Section 22,

Article 1 of the 1945 Missouri Constitution states "that the right of trial by jury as heretofore enjoyed shall remain inviolate." This constitutional provision does not give a trial by jury in an equity action. Relator has elected to pursue an equitable action and, therefore, respondent's contention is without merit.

■ Respondent also contends that we do not have jurisdiction because it is not shown with certainty that the amount involved is in excess of $7,500. Our jurisdiction is invoked under Section 4, Article V of the Constitution which gives us superintending control over circuit courts and states that we may issue and determine original remedial writs. Therefore, it is not necessary that over $7,500 be involved.

There are other points briefed but we will not discuss them because they deal with the merits of relator's claim. These should be decided by the trial court.

From what we have said, our peremptory writ should be awarded. It is so ordered. All concur, except *Leedy, J.*, doubtful.