Esther G. BARNES, Plaintiff-
Respondent,

v.

E. M. HILTON, Defendant,

and

Westport Bank, a Corporation, Garnishee,

and

United States of America, Intervenor-
Appellant.

No. 22898.

Kansas City Court of Appeals.

Missouri.

April 6, 1959.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Louise Foster, Attys., Dept. of Justice, Washington, D. C., Edward L. Scheufler, U. S. Atty., O. J. Taylor, Asst. U. S. Atty., Kansas City, for appellant.

Rodger J. Walsh, Davis, Thomson, Van Dyke & Fairchild, Kansas City, Karl V. Shawver, Jr., Paola, Kan., for respondent.

MAUGHMER, Commissioner.

In this case both the appellant United States of America and the respondent Esther G. Barnes assert a valid and prior lien on a certain bank account. The property involved is the sum of $3,884.75 which, when this proceeding was instituted, existed as a general deposit in the Westport Bank of Kansas City, Missouri, in the name of E. M. Hilton, who was then deceased.

We state the facts chronologically in so far as practicable. On February 9, 1952,

respondent Barnes, in the District Court, Johnson County, Kansas, secured judgment in the sum of $13,763.62 against one E. M. Hilton. The judgment debtor Hilton died December 21, 1956, and his widow Catherine G. Hilton was on June 12, 1957, duly appointed as executrix of his estate by the Probate Court of Johnson County, Kansas. On June 14, 1957, respondent Barnes filed in the Circuit Court of Jackson County, Missouri, her "petition on foreign judgment" in which the said E. M. Hilton was named defendant. There was attached an affidavit that defendant was a nonresident. The Westport Bank was summoned as garnishee under a writ of attachment. Attached to plaintiff's petition was a duly certified transcript of her Kansas judgment. The garnishee bank was served with notice on June 18, 1957, and on September 16, 1957, it filed answer. Therein the bank stated that (1) on the date served it had on its books an account in the name of E. M. Hilton with a credit balance of $3,884.75; (2) it had been informed the said E. M. Hilton died December 21, 1956, and (3) on September 9, 1957, an agent of the Treasury Department of the United States of America had served on it a Notice of Federal Tax Lien against said account. A copy of this lien notice was attached to the garnishee's answer. On September 24, 1957, the court directed the garnishee to pay this money to the clerk and it did so.

In the meantime the potential parties in interest had not remained idle. Under date of October 11, 1957, respondent Barnes secured a revivor of her judgment in the Kansas court against Catherine G. Hilton, executrix for the deceased judgment debtor and filed a duly authenticated copy with the Circuit Court in Missouri. On December 26, 1957, Catherine G. Hilton, widow, as executrix, filed her motion to intervene, to be joined as a party, and praying that the garnisheed and impounded funds be paid to her for distribution under the laws of Kansas. The record is silent as to what disposition, if any, was made of this motion.

On February 12, 1958, appellant United States of America filed its motion to intervene. Therein it alleged (1) that E. M. Hilton and Catherine G. Hilton, his widow, were indebted to the United States of America for income taxes, penalties and interest for the taxable years 1951, 1952 and 1953, in the aggregate amount of $399,-195.25; (2) that on August 30, 1957, notice and demand for payment and a jeopardy assessment were made by the District Director, Internal Revenue Service at Wichita, Kansas; (3) that on September 6, 1957, Notice of Federal Tax Lien was filed in the office of the Register of Deeds, Johnson County, Kansas; (4) that on September 9, 1957, Notice of Federal Tax Lien was filed in the office of the Recorder of Deeds, Jackson County, Missouri, and alleging that by reason thereof the Government had a prior lien, and praying that the impounded funds be paid to it.

Except for the certified copies of respondent's original judgment, its revivor against the executrix, the Letters Testamentary and the copy of the Government's Notice of Lien served on the garnishee on September 9, 1957, the record reveals no further formal proof. However, the trial court sustained the Government's motion to intervene. On March 14, 1958, the respondent Barnes filed her motion to dismiss the Government's petition because "On the face of the petition" it has no right to intervene and no entitlement to the fund. Such a motion, if sustained, is tantamount to a confession of all facts well pleaded in such petition. Under date of June 12, 1958, the court sustained respondent's motion to dismiss the Government's petition, entered judgment for respondent Barnes against the defendant Hilton in the sum of $16,092.52, and directed the clerk to pay the garnisheed and impounded fund of $3,884.75, less costs, to Barnes and her attorney. In due time the Government perfected its appeal. On this appeal we are concerned only with the proper disposition of the bank deposit as between Barnes and the Government.

■ Appellant's first assignment of error is that the circuit court was without jurisdiction under plaintiff's petition for the reason that the defendant E. M. Hilton was dead. The petition on its face did not show that he was deceased. Moreover, after the suggestion of his death by the garnishee and before judgment, proof of revivor on October 11, 1957, by the Kansas court and against his legal representative was made. In Missouri the bank account of a nonresident judgment debtor may be reached through execution, attachment and garnishment by the nonresident judgment holder. 26 Washington U. Law Quarterly 85; Wyeth Hardware & Mfg. Co. v. Lang, 127 Mo. 242, 29 S.W. 1010, 27 L.R.A. 651; Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023. As stated by Judge Douglas for our Supreme Court in State ex rel. Fielder v. Kirkwood, 345 Mo. 1089, 138 S.W.2d 1009, 1011: "* * * it is settled that in this state one nonresident may sue another by attachment". Appellant says that under Kansas law, Ballinger v. Redhead, 1 Kan.App. 434, 40 P. 828, the judgment became dormant upon the death of the defendant. Even so, it became reanimated when the revivor judgment was entered. We believe the circuit court had jurisdiction at the time it entered judgment.

■ Respondent also questions our jurisdiction of this appeal, asserting that the dismissal of appellant's petition was a discretionary act, did not amount to a final judgment for the purpose of appeal, and that the proper corrective remedy, if any, is mandamus. As authority we are offered the opinion in State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216. This case holds that mandamus is a proper remedy to require a trial court to permit intervention. In our case intervention was granted but the intervenor's petition was dismissed (denied) on the merits. We think the United States of America has an interest in the garnisheed funds and was properly joined as an intervenor. Moreover, Section 525.-090, V.A.M.S., Garnishments, specifically provides: "Any person claiming property, money, effects or credits attached in the hands of a garnishee, may interplead in the cause, as provided by law in attachment cases; * * *". Respondent also says that in United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 241, 99 L.Ed. 264, the Supreme Court of the United States held that: "The relative priority of the lien of the United States for unpaid taxes is, * * * always a federal question to be determined finally by the federal courts". While this is true, it does not follow that state courts should not and may not enforce such federal determinations in their own forums. Besides, Section 14.070, 3 V.A.M.S. specifically provides that suits for collection of Federal Internal Revenues "* * * may be brought in the several courts of this state, in like manner and effect as suits under the laws of this state". We rule this point against respondent. She next asserts that appellant's petition sought to inject an independent issue and action into the case, namely, the question of E. M. Hilton's tax liability. The question as to whether or not Mr. Hilton is or was liable for unpaid federal income taxes and if so, how much, is not an issue in this litigation.

Having disposed of the preliminary objections and assignments set forth by both appellant and respondent we now approach the principal and vital issue; that is, do each of these parties have a valid, existing lien or quasi lien upon the garnisheed bank deposit and if so, which is prior?

We first set forth some of the provisions of the Internal Revenue Code of 1954. Section 6321. Lien for taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all

property and rights to property, whether real or personal, belonging to such person". 26 U.S.C.A. § 6321.

Section 6322. Period of lien.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time". 26 U.S.C.A. § 6322.

Section 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors.

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c) the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws. —In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; * * *". 26 U.S.C.A. § 6323.

■ Garnishment generally, and certainly in Missouri, is a purely statutory proceeding. Before a judgment can be entered against a garnishee there must have been a prior, valid execution and unless there was a valid, existing judgment, there could be no valid execution. In Flynn v. Janssen, Mo., 284 S.W.2d 421, 422, the Supreme Court said: "This because garnishment is purely a statutory proceeding, and under Section 525.010 RSMo 1949, V.A. M.S., which provides for subjecting persons 'to garnishment, on attachment or execution,' and the next section 525.020, a prior execution is essential. Gilbert v.

Malan, 231 Mo.App. 469, 100 S.W.2d 606. And, as pointed out in 38 C.J.S., Garnishment, § 16, such prior execution must be valid. As there was no underlying judgment in the main case, there could have been no valid execution, and hence nothing to support garnishment proceedings".

In Hoffman v. Mechanics-American Nat. Bank, 211 Mo.App. 643, 249 S.W. 168, 171, the court quoted with approval as follows from Hauptman & Co. v. Whittle, 85 Mo. App. 188, 191: " 'The law is settled by the statute and adjudications, as well as the statement of textwriters, that before a judgment can be entered against a garnishee one must have been rendered against the principal defendant. R.S.1889, § 5332; Miller v. Anderson, 19 Mo.App. 71; Drake on Attachment, § 460. A judgment against the principal defendant is the foundation upon which that against the garnishee must rest; and one prosecuting a garnishment should show that he has a valid judgment against the defendant before having one entered against the garnishee. The burden was on him and not the garnishee.' " See also, Roberts v. Meek, Mo.App., 45 S.W.2d 537; Flynn v. Janssen, Mo., 266 S.W.2d 666.

In United States v. Acri, supra, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, defendant Acri was convicted of the murder of one Oravec, whose personal representative on August 6, 1947, filed an action against Acri for wrongful death. On the same date certain cash and bonds were attached. The personal representative obtained judgment but in the meantime, after issuance of the writ of attachment but before judgment, the Government recorded its tax lien. The Supreme Court of the United States held first, that the relative priority of the lien of the United States for unpaid taxes is always a federal question to be finally determined by the federal courts; second, that although the Ohio courts (venue of the litigation) had designated an attachment lien "an execution in advance", such was not binding upon the United States Supreme Court; and, third, that where the federal tax lien

was recorded subsequent to the attachment lien, but prior to the date the attaching creditor obtained judgment, the United States tax lien was prior.

In United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, the Texas furniture store property of one Adams was destroyed by fire. Respondent company, as insurer, agreed upon the amount of the loss. Before payment was made the Sunnyland Wholesale Furniture Company sued the insured on an open account, attached and garnisheed the insurance funds and later secured a judgment. In the meantime, and before such judgment, the United States perfected its tax liens against the fund. It was held that the United States tax liens were superior and prior.

■ These two cases seem to hold that attachment and garnishment before claimant has a valid, enforceable, final judgment, will not establish a lien entitled to precedence over a government tax lien established later but before such a judgment. It is true that in neither of these two federal cases had the garnishor reduced his claim to final judgment at the time the Government recorded its tax lien and "proved it up" as to the garnisheed tangible personal property, whereas in our case the respondent garnishor had secured a final judgment against E. M. Hilton in the state of Kansas. But before respondent Barnes inaugurated any proceedings in Missouri against the Westport Bank deposit, her judgment debtor had died. She had an existing, but dormant judgment in Kansas and one on which neither execution nor garnishment could issue unless the judgment was first revived against the personal representative of the judgment debtor, and until so revived, it was not an active, current, valid judgment. Prior to its being reactivated by revivor, the judgment was not enforceable in Kansas. Nor will Missouri courts enforce a Kansas judgment which is not enforceable by the Kansas courts. Our own laws too, require re-

vivor of judgments against a deceased defendant before execution.

We do not deem it necessary to decide in this case whether respondent should have dismissed her Missouri action and started again against the executrix after October 11, 1957, when her basic judgment was revived. We do hold that her lien, actual or equitable, did not attach prior to this latter date when her judgment became valid, alive and enforceable, that is, on October 11, 1957.

Now, did the Government lien for unpaid taxes attach and become enforceable prior to October 11, 1957? It should first be noted that under the provisions of the Internal Revenue Code set out supra, it is not required that the Government reduce its claim to judgment in order for its lien to become effective. On February 12, 1958, appellant, United States of America, filed its motion to intervene. Therein it asserted the tax indebtedness of Mr. and Mrs. Hilton, alleged that on August 30, 1957, notice and demand for payment was made, a jeopardy assessment levied by the District Director at Wichita, Kansas, the state in which the parties were domiciled, on September 6, 1957, notice of the tax lien was filed in Johnson County, Kansas, and on September 9, 1957 in Jackson County, Missouri.

■ The case comes to us on appeal with all of these factual allegations admitted, since the court sustained the respondent's motion to dismiss the intervening petition of the Government. It appears, therefore, that under the sections of the Internal Revenue Code set forth above, the Government's general lien attached on August 30, 1957, when notice, demand for payment and the jeopardy assessment were made in the state of Kansas. But under Section 6323, supra, such lien would not be valid against a judgment creditor until notice thereof had been filed in the office of the Recorder of Deeds (in Missouri) where the property subject to the lien is situated. Therefore, the lien did not become effective

against the judgment creditor and respecting this particular property until September 9, 1957, when the notice was filed in the office of the Recorder of Deeds, Jackson County, Missouri, and notice of such lien served on the Westport Bank. We believe, therefore, and hold that under the facts as pleaded in the Government's intervening petition, its lien against this particular bank deposit became valid and effective on September 9, 1957. See also, United States v. Eiland, 4 Cir., 223 F.2d 118, 122.

It follows, therefore, that since the Government's lien attached on September 9, 1957, and the respondent's lien did not become effective prior to October 11, 1957, in respect to this particular fund, the Government's lien is superior and prior. However, it may be that respondent Barnes might desire to put the Government to proof as to the factual allegations of its intervening petition. If she does, she should be afforded an opportunity to do so.

Accordingly, that part of the judgment dismissing appellant's petition in intervention is reversed and the court is directed to reinstate same. In addition, that part of the judgment directing payment of the impounded fund of $3,884.75, less costs, to respondent and her attorney, is reversed and the cause is remanded for trial on the merits and in accordance with this opinion.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.