EARL C. WARWICK, Appellant, v. FRANK DeMAYO, JR., VENDO SALES COMPANY, a Corporation; C. EARL HOVEY, Trustee, ELMER F. PIERSON, JOHN T. PIERSON, EDWARD M. NEVILLE and G. R. STARNES, Respondents.—No. 40708.—213 S. W. (2d) 392.

Division One, September 13, 1948.

*Burns & Burns, Ira B. Burns* and *Robert S. Burns* for appellant.

132

*R. Carter Tucker, John Murphy, William H. Wilson* and *J. Gordon Siddens* for respondents The Vendo Company, C. Earl Hovey, Trustee, Elmer F. Pierson, John T. Pierson and Edward M. Neville; *Robert W. Wagstaff and Tucker, Murphy & Wilson* of counsel.

[393] DOUGLAS, P. J.—Plaintiff claims he is entitled to recover more than $50,000 from defendants because by fraud they wrongfully acquired and have used his invention which he had disclosed in confidence to one of the defendants, DeMayo. He seeks to stop them from continuing to manufacture and sell the device which he invented, and to make them account to him for their profits. The trial court sustained defendants' motions to dismiss, and plaintiff has appealed.

One of the grounds for dismissing the petition was that it showed on its face that the statute of limitations barred plaintiff's action. This was because plaintiff failed to file his action within five years after he discovered defendants' fraud.

Plaintiff argues that the statute of limitations cannot bar this action because his disclosure of his invention to defendant DeMayo was under an express trust. The other defendants thereafter acquired his invention with notice of the express trust and through collusion with the trustee DeMayo, so they became trustees ex maleficio. Therefore, since plaintiff is the beneficiary of an express trust the statute does not run against him, and in favor of the trustee of the express trust and the trustees ex maleficio.

However we find plaintiff manifested no intention to create a trust in disclosing his invention to DeMayo so there could be no express trust. The relationship between plaintiff and DeMayo arising from the agreement between them was analogous to that of joint adventurers engaged upon a common undertaking for joint profit. Under these circumstances the statute of limitations has barred this action.

Plaintiff states in his petition he invented in the early part of 1936 a coin operated vending machine for the self-service sale of bottled soft drinks. After inserting a coin in a slot, a person could obtain a bottle containing a soft drink from a cooling cabinet. Defendant DeMayo was connected with a cabinet company which made and sold cooling cabinets. Plaintiff set out to interest DeMayo, and through DeMayo the cabinet company with which he was connected, in the manufacture and sale or other disposition of a vending machine embodying his invention.

Plaintiff disclosed his invention to DeMayo in confidence under an oral contract for the purpose of having DeMayo use it in manufacturing vending machines. They also orally agreed since DeMayo had already advanced money to finance the manufacture and marketing of the invention, and would continue to do so, that he should be first reimbursed from the proceeds of the sales for the monies so advanced. After he had been reimbursed the net proceeds were to be shared equally between him and plaintiff. By the oral agreement DeMayo promised not to dispose of the invention or any interest in it without plaintiff's consent.

Plaintiff then charges that defendants fraudulently conspired to deprive plaintiff [394] of his invention by having DeMayo obtain a patent in his own name on plaintiff's invention although they knew DeMayo held the invention in trust, and by obtaining an assignment of the patent DeMayo procured. All of this scheming was concealed from plaintiff. Plaintiff says he made persistent inquiries of DeMayo about the use of his invention but he did not learn these facts until September 1946. But plaintiff's petition is self-contradictory. He alleges he discovered a vending machine embodying his invention

in public use in the spring of 1940. He learned such machines were distributed by defendant Vendo Company so he wrote the company advising them he was the inventor, and threatening immediate suit. He received a reply to his letter from the Vendo Company dated April 11, 1940, exactly as follows:

"Dear Mr. Warwick:

"We are in receipt of your letter of April 2 in which you are making claim for some part of the purchase money which we paid to Mr. DeMayo. You further state you were the inventor for Mr. DeMayo.

"Of course, you realize we never had any negotiations with you and all our negotiations were with Mr. DeMayo for the reason that the records in the patent office in Washington showed that Mr. De-Mayo was the inventor of the machine which we subsequently purchased.

"We are convinced there must be some misunderstanding between you and Mr. DeMayo as all of our negotiations with him have been strictly in accord with representations made by him and if you have any claim we are confident if you properly present it to Mr. DeMayo that your interest will be well protected.

THE VENDO COMPANY

By D. F. Pierson, President."

Plaintiff thereupon got in touch with DeMayo who in furtherance of the conspiracy informed him that he had a contract with the Vendo Company that fully protected plaintiff's rights to the invention. DeMayo also replied there had been no profits but that in due time an accounting would be made. Plaintiff claims the Vendo Company's letter and DeMayo's statements lulled him into taking no action at that time even though, as we see it, DeMayo had broken his agreement in secretly obtaining a patent in his own name and then selling it.

This suit based on fraud was filed May 16, 1947, or some seven years after plaintiff received the letter from the Vendo Company informing him that DeMayo has obtained a patent on plaintiff's invention and that the Vendo Company had bought it. The letter clearly revealed to plaintiff DeMayo's breach of faith.

Ordinarily the five year statute of limitations would have commenced to run upon the receipt of such information as contained in the letter which informed plaintiff of the breach of faith. Section 1014 R. S. 1939 provides a five year limitation on such an action as this with the customary saving clause that in an action for relief on the ground of fraud, the cause of action is deemed not to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

To avoid the application of this statute plaintiff argues that he created an express trust with DeMayo as trustee when he dis-

closed his invention to DeMayo. Therefore he is protected by the rule that the statute of limitations does not run against an express continuing trust, in favor of the trustee and against the beneficiary, so long as there has been no denial or repudiation of the trust.

To show that plaintiff created an express trust in disclosing his invention to DeMayo, plaintiff makes this allegation.

"He disclosed in strict confidence his aforesaid invention to Frank DeMayo, Jr., upon a mutual and express oral understanding that he, said Frank DeMayo, Jr., would use in strict confidence his aforesaid invention, as well as the information which he had gained as a result of the aforesaid disclosure for the purpose of manufacturing and selling, protecting plaintiff's rights therein, or otherwise disposing of the same."

Plaintiff argues here that by disclosing his invention to DeMayo in confidence he transferred the legal title to it but retained the beneficial or equitable title." Plaintiff also asserts that the restriction placed on [395] DeMayo not to dispose of the invention without plaintiff's consent was a reasonable provision for the protection of plaintiff's beneficial or equitable interests. Thus says plaintiff we have the manifestation of an intent to create an express trust.

Whether plaintiff created an express trust in this case must be determined from the allegations of the oral agreement and plaintiff's actions under it for there is nothing in writing evidencing such an intention.

In disclosing the secret of his invention to DeMayo we may say that he transferred title to it in furtherance of the contract. Because of the fact that a disclosure transfers title, ideas have been compared to legal tender or negotiable instruments, as title to these also passes by delivery. Where ideas are embodied in a concrete plan or a device to accomplish a definite result the inventor may contract with reference to its disclosure. Schonwald v. Burkhart Mfg. Co., 356 Mo. 435, 202 S. W. (2d) 7.

But did plaintiff's disclosure of his invention alone manifest an intention to create an express trust? We think not. An express trust can come into existence only by the manifestation of an intention to create such a trust, that is to create the kind of relationship known in law as an express trust. It is often difficult, as it is in this case, to determine whether the owner of property is creating a trust or making some other disposition.

Plaintiff disclosed his secret to DeMayo under an agreement governing its use for their joint profit. Any benefits plaintiff was entitled to receive flowed only from the obligation of their agreement, not from any obligation imposed by law upon a trustee holding property under an express trust.

The fact that plaintiff disclosed his invention "in strict confidence" did not of itself manifest an intention to create an express

trust. A disclosure in strict confidence may have been only in secrecy. But if we assume it was disclosed under a confidential or fiduciary relationship still no express trust was thereby created. And this is so, even though the relationship between a trustee and his beneficiary is a fiduciary relationship.

A fiduciary relationship may also arise from other circumstances. In some instances the relationship between joint adventurers, between principal and agent, between employer and employee, and the relationship between partners, is of a fiduciary nature. It has been held that under certain conditions every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. See Trice v. Comstock, 121 Fed. 620. We quoted with approval from that case in State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S. W. (2d) 257, that the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning an interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. Fiduciary relationships may thus arise from contracts wherein no express trust is created.

It seems clear to us under all the facts there was no manifestation of an intention to create a trust in this case. To the contrary the parties appear to have engaged upon a joint adventure somewhat in the nature of a partnership. Plaintiff contributed his invention, DeMayo advanced the money for manufacturing and marketing it. After DeMayo was reimbursed for his expenses, the parties were to share the profits equally.

We assume the relationship created by the contract was a fiduciary one under the facts here. Therefore the violation of the contract by DeMayo constituted a breach of faith. But that gives rise only to an equitable remedial doctrine described as a constructive trust. And the so-called constructive trust is only in respect to any unjust enrichment gained by the fiduciary through his breach of faith. But this would avail plaintiff nothing in this case because the five year statute of limitations bars restitution under this theory. See Kerber v. Rowe, 348 Mo. 1125, 156 S. W. (2d) 925.

And any action against DeMayo [396] alone for the breach of an oral contract in the nature of a joint adventure would also be barred by the five year statute under the facts alleged.

Since the petition shows the action is barred by limitations, the trial court properly dismissed it.

The judgment is affirmed. All concur.