Stanley Hugh DURWOOD, Marjorie Beth Grant and Richard Mark Durwood, Executors of the Estate of Edward Dubinsky Durwood, Deceased, and Stanley Hugh Durwood, Marjorie Beth Grant and Richard Mark Durwood, Individually, Appellants-Respondents,

v.

H. W. DUBINSKY, Irwin Dubinsky, Ruth Dubinsky, Executrix of the Estate of Barney Dubinsky, Deceased, and Dubinsky Brothers Theatres, Inc., a corporation, Appellants-Respondents,
and
Commerce Trust Company, a corporation,

Respondent.

No. 38747.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1962.

Terence M. O'Brien, Edward F. Aylward, Kansas City, for plaintiffs as respondents.

Basil L. Kaufmann, St. Joseph, S. David Trusty, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondents and cross-appellants.

STOCKARD, Commissioner.

This is the second appeal to this court in litigation which was commenced in November 1948. See Durwood v. Dubinsky, Mo., 291 S.W.2d 909.

For some time prior to May 9, 1946, Edward D. Durwood and two of his children, Stanley H. Durwood and Marjorie Beth Grant, were engaged in the operation of a number of theaters in partnership with Irwin Dubinsky, H. W. Dubinsky and Barney Dubinsky, all younger brothers of Edward D. Durwood. A dispute arose concerning the ownership of the theatrical properties, and a suit was filed in Cole County, Missouri, by Barney, Irwin and H. W. Dubinsky to establish their interest. During trial that suit was settled and a contract (hereafter referred to as the "1946 contract") was entered into setting out the terms of the settlement. It provided that the partnership was terminated as of May 8, 1946, that Barney, Irwin and H. W. Dubinsky disclaimed any interest in the various theatrical properties, and that Edward D. Durwood was to pay to his three brothers the sum of $400,000 and certain other amounts. In addition, Edward D. Durwood was to employ each of his brothers for a term beginning May 9, 1946, and expiring June 30, 1949, and as compensation therefor he was to pay them a sum equal to 25% of the net profits from the operation of certain named theaters, 10% to be paid to Barney and Irwin Dubinsky each, and 5% to H. W. Dubinsky. Other provisions of the contract will be mentioned subsequently. Barney Dubinsky died in July 1948 and his executrix is a party to these proceedings.

On November 3, 1948 Edward D. Durwood filed the pending suit against Irwin and H. W. Dubinsky and the executrix of the estate of Barney Dubinsky. He alleged that although he had paid to his brothers all the money due them under the 1946 contract the defendants contended otherwise, and he prayed that they be required to exhibit all claims and demands against him and that it be determined whether he owed any additional amounts. Plaintiff subsequently filed "supplemental petitions" which stated separate causes of action for an injunction and a declaratory judgment. All the issues were referred to the referee, and after the hearing plaintiff filed an "amended petition" in four counts. Count I was an action at law for an accounting and was the same as the original petition. Count II and Count III were the same as the "supplemental petitions." Count IV had no counterpart in the previous pleadings. It was there alleged that Irwin and H. W. Dubinsky, in conspiracy with others, violated the 1946 contract by engaging in the theatrical business prior to July 1, 1949, and had built, acquired and operated theatrical property and received profits therefrom. In the prayer it was requested that the court impress the theatrical properties obtained, and the rentals and profits derived therefrom, with a constructive trust in favor of plaintiff.

The trial court approved the report of the referee and entered judgment

(hereafter referred to as the "1954 judgment") in favor of the Dubinsky brothers on Count I and in favor of plaintiff on Counts II, III and IV. On appeal, Durwood v. Dubinsky, Mo., 291 S.W.2d 909, this court held that the issues presented by Counts III and IV of the amended petition pertaining to an injunction and a constructive trust were not referable to a referee over the objections of the Dubinsky brothers, and that part of the judgment pertaining to those counts was reversed and the causes remanded for trial before the court as distinguished from a referee. It was also held that the issues presented by Count II, in which a declaratory judgment was sought, were not referable, but that plaintiff was entitled to judgment on the pleadings. As to Count I it was held that the issues there presented had been properly referred to a referee, that the only challenge of the correctness of the judgment entered thereon was without merit, and that part of the judgment disposing of the issues there presented was affirmed.

Upon remand the parties stipulated that the record made before the referee and the trial court in the first trial, including all exhibits, could be considered by the trial court on the rehearing. On March 24, 1960, after trial pursuant to the remand, but before the entry of the judgment, Edward D. Durwood died. Stanley Hugh Durwood, Marjorie Beth Grant and Richard Mark Durwood, as executors of the estate of Edward D. Durwood and also as individuals were substituted as plaintiffs. When we hereafter use the singular term "plaintiff" we refer to Edward D. Durwood or to those who are now substituted as plaintiffs, and when we use the term "defendants" we refer to Irwin and H. W. Dubinsky.

On January 10, 1961 the trial court entered judgment (hereafter referred to as the "1961 judgment") in favor of plaintiff on Count III and made the injunction permanent. It dismissed Count IV thereby ruling in favor of defendants. Plaintiff has appealed from the ruling as to Count IV and the defendants have appealed from the ruling as to Count III.

Because of some challenges on this appeal made by plaintiff to that part of the 1961 judgment in which reference is made to Count I, it is necessary that we set out in some detail certain facts pertaining to the contents of the 1954 and 1961 judgments.

The 1954 judgment did not specifically refer to the various counts of the amended petition, but it was divided into paragraphs and the subject matter pertaining to the respective counts is readily discernible. As to the issues presented by Count I the trial court on the first trial found that "Barney Dubinsky was entitled to receive as compensation under the terms of said contract * * * a balance * * * in the sum of $22,664.84." It then held that the executrix of Barney Dubinsky's estate should have judgment against Edward D. Durwood in the sum of $31,-056.41 (which included accrued interest), and that the judgment be secured by a lien on certain corporate stock and a note placed in escrow with the Commerce Trust Company pursuant to the 1946 contract. It also held that Irwin Dubinsky and H. W. Dubinsky should have judgment against Edward D. Durwood in the sum of $27,-281.22 and $13,510.53 respectively (which sums included accrued interest), but the judgment did not provide that the payment of these latter two amounts should be secured by a lien on the property in escrow. Instead it provided that "this judgment in favor of [Irwin Dubinsky in one case and H. W. Dubinsky in the other] be, and it hereby is satisfied by setoff as hereinafter provided." It was then held that Edward D. Durwood should have judgment against Irwin Dubinsky and H. W. Dubinsky in the sum of $160,156.51 by reason of imposing a constructive trust on the profits derived from the operation by them of certain theaters in violation of the 1946 contract, but that this "judgment [in favor of Edward D. Durwood] is hereby reduced

by setting off against it the amounts of the judgments against plaintiff herein rendered for the sums of $27,281.22 and $13,510.53 in favor of defendants Irwin Dubinsky and H. W. Dubinsky, leaving a balance of $119,364.76." Our mandate on the previous appeal provided that "the judgment * * * as to Count I * * * be in all things affirmed and stand in full force and effect," and also that "that part of the judgment pertaining to * * * Count IV, be reversed, annulled and for naught held and esteemed, and that the said appellants [including Irwin and H. W. Dubinsky] be restored to all things which they have lost by reason of that portion of the judgment."

After the conclusion of the trial on remand the trial court made findings of fact and conclusions of law pertaining to Count I, the substance of which was that (1) those findings of fact made by the referee which did not pertain to Count I are void and of no effect; (2) plaintiff breached the terms of the 1946 contract by failing to account properly and fully to the Dubinsky brothers; (3) Irwin Dubinsky, H. W. Dubinsky and the estate of Barney Dubinsky should have judgment against plaintiff on Count I in the amounts set forth in the findings; and (4) the judgment in favor of Edward D. Durwood based on Count IV against Irwin and H. W. Dubinsky in the sum of $160,156.51 was annulled and wiped out by the judgment of the Supreme Court and no setoffs exist in plaintiff's favor against the judgments in favor of the Dubinsky brothers and against him pursuant to Count I. The trial court then set aside the entire 1954 judgment and entered a new judgment covering the entire case, and that part pertaining to Count I is in agreement with the above findings of fact and conclusions of law. Although stated differently, the amount of the judgment in favor of each of the Dubinsky brothers pursuant to Count I is the same in the 1954 and the 1961 judgments, except for the provision for and the effect of the setoff.

Plaintiff now contends on this appeal that since Count I was affirmed on the previous appeal "the court below had no power or authority to set aside said adjudication or the findings of fact or conclusions of law with respect thereto" or to "enter new judgments on said count or to make new findings of fact or conclusions of law with respect thereto." He also contends that the adjudication pertaining to Count I in the 1954 judgment was not that plaintiff was indebted to Irwin and H. W. Dubinsky, but that they were indebted to him in the amount of $119,364.76, for which sum he was given judgment and execution against them.

Where the judgment of an appellate court calls for the remand of the cause to the trial court for further action the judgment is not self-executing but must be certified back to the trial court for execution. This is done in this state by what is called the mandate, and by it authority and jurisdiction is granted to the lower court to take such steps as are directed. Prasse v. Prasse, 342 Mo. 388, 115 S.W.2d 807; Abrams v. Scott, 357 Mo. 937, 211 S.W.2d 718. The mandate serves the purpose of communicating the judgment to the lower court, State ex rel. Kansas City of Missouri v. Public Service Commission of Missouri, 360 Mo. 339, 228 S.W.2d 738, 741, and the opinion, which is a part thereof, serves in an interpretative function. Hoelzel v. Chicago R. I. & P. Ry. Co., 340 Mo. 793, 102 S.W.2d 577, 578; State ex rel. McGrew Coal Co. v. Ragland, 339 Mo. 452, 97 S.W.2d 113, 115. Count I of the amended petition was an action at law for an accounting and it pertained only to the amount of money, if any, that plaintiff owed as wages or compensation to the Dubinsky brothers pursuant to the 1946 contract. The issues there presented did not involve a constructive trust or whether the Dubinsky brothers owed plaintiff anything unless it was by reason of an overpayment of compensation. The trial court held that plaintiff had not paid his brothers all that was due them under the 1946 con-

tract, and it entered judgment in their favor for the difference. When we affirmed Count I that is the part of the judgment to which we had reference. At the first trial the trial court held that pursuant to Count IV plaintiff was entitled to a judgment against Irwin and H. W. Dubinsky in the amount of $160,156.51 on the basis of a constructive trust. We held this to be erroneous and we reversed all of that part of the judgment pertaining to Count IV. By our mandate we directed that Irwin and H. W. Dubinsky be restored to all things which they had lost by reason of this erroneous portion of the judgment. This direction required the trial court to delete that part which gave a judgment to plaintiff in the amount of $160,156.51, and also to delete that part which purported to satisfy the judgment in favor of Irwin and H. W. Dubinsky by a setoff. This necessarily required that the part of the 1954 judgment pertaining to Count I be rewritten because if not the part remaining after the deletions would not have made sense and would not have reflected the ruling of this court. Plaintiff's assertion in his brief that "the adjudication pertaining to Count I was * * * that [Irwin and H. W. Dubinsky] were indebted to [Edward D. Durwood] in a net amount of $119,364.76" is clearly wrong and totally without merit. Such construction of the 1954 judgment is in direct conflict with the clear and express direction to the trial court set forth in the mandate. We consider it immaterial whether or not, strictly speaking, the trial court could set aside the previous findings of fact made by the referee and enter new findings of fact and conclusions of law as to Count I, but it is perfectly clear that the findings of fact and conclusions of law that were made were correct. The meritorious question is whether that part of the 1961 *judgment* which pertained to Count I complied with our previous opinion and mandate. Other than a matter resulting from the substitution of the heirs of Edward D. Durwood as parties in their individual capacity, which

we subsequently discuss, the 1961 judgment correctly carried out the terms of the mandate on the previous appeal.

We shall consider now the merits of Count IV by which Edward D. Durwood sought the imposition of a constructive trust. This requires an additional statement of lengthy and complicated facts.

The 1946 contract contained the following provisions:

"8. Second Party [Edward D. Durwood] hereby employs First Parties [the Dubinsky brothers] for a term beginning as of May 9, 1946 and expiring June 30, 1949, in the following capacities, to wit: Barney Dubinsky, Advisory and Consultant; Irwin Dubinsky, City Manager, St. Joseph, Missouri, and H. W. Dubinsky, City Manager, Leavenworth, Kansas, on the following terms and conditions, to wit:

"(g) First Parties agree to give their exclusive services, time and efforts to the employment herein provided, and during the term of such employment agree not to engage in any other business, theatrical or otherwise, subject, however, to the following exceptions:

"1. Barney Dubinsky may continue to engage in the nut business he is now operating in Tucson, Arizona.

"2. Irwin Dubinsky may continue his ownership of an interest in the hat manufacturing business in St. Joseph, Missouri.

"3. Any of the First Parties may acquire any properties of any kind or character they desire, provided they do not engage in the theatrical business during the term of their employment hereunder."

Following the execution of the 1946 contract Irwin and H. W. Dubinsky knew that their employment by Edward D. Durwood would terminate on June 30, 1949. Rec-

ognizing that pursuant to their contract of employment they were not during such employment to "engage in any other business, theatrical or otherwise," with the exceptions previously set out, but that they could under the contract "acquire any properties of any kind or character they desire[d], provided they [did] not engage in the theatrical business," Irwin and H. W. Dubinsky started making arrangements to acquire theatrical properties to be operated by them after the termination of their employment. On July 31, 1947, Irwin, his wife, Rosalind, and H. W. Dubinsky entered into a written partnership agreement "to pool their resources and acquire properties, including theatrical properties and to engage in other types of businesses and enterprises in the years to come." We shall hereafter refer to this association as the Dubinsky partnership. A bank account for the partnership funds was established in the Empire Trust Company at St. Joseph, Missouri, in the name of Irwin Dubinsky.

Sites for two drive-in theaters were purchased in the name of Rosalind Dubinsky, one at Rockford, Illinois and the other at Lincoln, Nebraska. Drive-in theaters were constructed thereon at the cost of $321,290.65, including the land, the money being paid from the partnership account which in addition to the contributions of the partners had been supplemented by borrowed money. A St. Louis architect drew the plans for the theaters, supervised the letting of the construction contracts, and gave general supervision to the construction of the theaters. Mr. Kensil Elkins was employed by the partnership to superintend the construction at Rockford, Illinois, and Mr. Herman Gould was employed for the same purpose at Lincoln, Nebraska.

On March 31, 1948 the River Lane Amusement Corporation was incorporated in Illinois, and on April 5, 1948 the Starview Amusement Corporation was incorporated in Nebraska. The incorporators were Mr. Mannie Schermer, a St. Louis businessman, Burdie Schermer, his wife, and Sidney Schermer, his nephew. These two corporations were intended to be the operating agencies of the two drive-in theaters, and by written agreements dated April 2, 1948 and April 6, 1948 the Dubinsky partnership leased the land and physical properties of the drive-in theater at Rockford, Illinois to the River Lane Amusement Corporation, and it leased the land and physical properties of the drive-in theater at Lincoln, Nebraska to the Starview Amusement Corporation. Each lease was for a period of five years at an annual rental of $25,000 payable in advance. In addition, each lease provided that since the investment of the Dubinsky partnership in the theater would be between $150,000 and $200,000 and the capital and net worth of the operating corporation was but $25,000, it was agreed that the operating corporation would "lend to the [Dubinsky partnership] the sum of $25,000 for a period of five years from and after the date of consummation of the said loan, without interest and without security of any kind," and also, that the sum of said loan could be advanced from time to time and the promissory note evidencing such loan should not be executed until the full amount had been received. Mr. Mannie Schermer was named president of each corporation, but he received no salary. Very shortly thereafter, Sidney Schermer transferred the stock of each corporation issued in his name to Bertha Schweitzer, a sister of Edward D. Durwood and of Irwin and H. W. Dubinsky. She was the wife of Maurice Schweitzer then the St. Louis representative for Paramount Film Distributing Company, who was made general manager of the two drive-in theaters shortly before they were opened. His salary was $200 a week.

The articles of incorporation of each operating corporation provided that the capital stock should consist of 250 shares of common stock with a par value of $100 each. It is impossible to determine from the conflicting testimony and evidence exactly how and by whom payment for the capital stock in the two corporations was made. It is fairly certain that cash was not paid di-

rectly to the corporations by any of the persons in whose names the stock was issued. Between October 2, 1947 and May 21, 1948 Mr. Mannie Schermer contributed a total of $50,000 by nine separate payments which were deposited in the Dubinsky partnership account. By reason of advances of cash by the partnership to each operating corporation, and by record entries as shown by the corporate records subsequently set up, the Dubinsky brothers contend that the capital stock of each corporation was paid up with the money received from Mannie Schermer. Plaintiffs, on the other hand, assert that the payment for the stock was actually made by the defendants. Mr. Schermer testified that there was an oral agreement that after July 1, 1949 he was to sell three-fourths of the capital stock in the operating companies to the "Dubinsky family," and that he did so and payment to him was made in the form of notes. In 1951 there was a settlement of accounts between Irwin, Rosalind and H. W. Dubinsky on the one part and Mr. Schermer on the other, and as a part of that settlement the notes were canceled. In this final adjustment Mr. Schermer and his wife transferred all their interest in the operating corporations to members of the Dubinsky partnership, and Mr. Schermer made a substantial profit on his original investment.

The River Lane Theater opened to the public on May 25, 1948 and the Starview Theater opened on May 28. Mr. Kensil Elkins was hired by the River Lane Amusement Corporation as local manager of the theater at Rockford, Illinois, and Mr. Herman Gould was hired by the Starview Amusement Corporation as local manager at Lincoln, Nebraska. Immediately before each theater opened Irwin Dubinsky furnished each operating corporation $2,500 from the Dubinsky partnership funds. This is one of the payments which was credited to "capital stock" on the corporate books. On the second night after the Starview Theater opened a flash flood washed away the gravel from the entire area. Mr. Schermer

told Irwin Dubinsky that the Starview Amusement Corporation had no money to repair the damage, and after the necessary repairs were made Irwin Dubinsky paid $15,916.54 therefor from the partnership account. Certain small items of what appeared to be operating expense for the theaters were paid by Irwin Dubinsky from the partnership funds, such as the cost of purchasing and storing pop corn oil and the cost of uniforms. Because of the inadequacies of the records it is not possible to determine how these payments were treated at the time made, but at the time of trial it was asserted by the Dubinsky brothers that they constituted loans to the operating corporations. After the theaters had been operating about two months checks from each theater were deposited by Irwin Dubinsky in the partnership account presumably in payment for rent and as advances on the loans provided for in the lease agreements. During 1948 there were seven checks totaling $29,000 received from River Lane Amusement Corporation and ten checks totaling $49,000 received from Starview Amusement Corporation. Five of the checks were designated as rent. No identification was placed on the others. No dividends were paid to the stockholders of record of the operating corporations, and neither Mr. Schermer nor the other stockholders of record received any part of the profits or income, either as salary or other compensation.

We should note at this time that on October 2, 1948 Edward D. Durwood discharged Irwin Dubinsky as city manager in St. Joseph, Missouri, and as an employee. Whether he was justified in doing so is not an issue on this appeal. The cause of the discharge was alleged insubordination, and the immediate incident which brought about the discharge was the refusal of Irwin Dubinsky to train the person, who was to take over as city manager after June 30, 1949, in the duties of that position. The limitations in that part of the 1946 contract, quoted previously, on the defendants engaging in other business pertained only to

"during the time of such employment." The provision permitting the acquisition of "properties of any kind or character" was qualified in that the defendants were not to engage in the theatrical business "during the term of their employment hereunder." The discharge of Irwin Dubinsky released him personally from the above restrictions. H. W. Dubinsky continued as an employee pursuant to the 1946 contract until June 30, 1949.

On March 9, 1949, Mr. Mannie Schermer purchased for $3,525.53 the site for a third drive-in theater between Alton and Woodriver, Illinois, the title to which he conveyed to Rosalind Dubinsky. The Altwood Theater was constructed on this site at the cost of $101,076.19 and payment for the construction was made from the bank accounts of the River Lane Amusement Corporation, the Starview Amusement Corporation, and the Dubinsky partnership. These disbursements from the bank accounts of the operating corporations were charged on the corporate books as rent payments to the Dubinsky partnership. This theater was opened on June 10, 1949, twenty days before the termination of the employment of H. W. Dubinsky pursuant to the 1946 contract. Subsequent to June 30, 1949 it was operated by the Altwood Amusement Corporation, the capital stock of which was held by Irwin, Rosalind and H. W. Dubinsky, Mannie Schermer and Bertha Schweitzer.

On November 23, 1948 Irwin Dubinsky leased the Orpheum Theater, a conventional indoor theater, at Fort Madison, Iowa. The lease was to Irwin Dubinsky individually, was not assignable, and required that he make certain additions to the building and do some remodeling. A deposit of $13,333.33 in escrow was required, and this as well as the cost of remodeling was paid from the Dubinsky partnership account. After June 30, 1949 this theater was operated by a partnership of which Irwin and H. W. Dubinsky, Mannie Schermer and Maurice Schweitzer were members. Irwin Dubinsky actively participated in the man-

agement and operation of this theater and also the Altwood Theater. However, all his activity occurred after his discharge when the contract limitations previously referred to did not apply to him personally.

■ Upon retrial of the issues presented by Count IV, pursuant to our remand, the trial court ruled in favor of Irwin and H. W. Dubinsky. Plaintiff contends on this appeal that this was error. In our determination of this issue we review the record de novo and determine the credibility, weight and value of the testimony and evidence, and we arrive at our own conclusions based on the entire record. Ordinarily in doing so we give deference to the trial judge's opportunity to see and hear the witnesses and thereby judge their credibility. However, the trial judge heard only a fraction of the total testimony, but when appropriate we shall give deference to the trial court's opportunity to see and hear those witnesses which testified before him.

■ Under the terms of 1946 contract Irwin and H. W. Dubinsky, as employees of Edward D. Durwood, were to give their "exclusive services, time and efforts" to the employment and were "not to engage in any business, theatrical or otherwise," with certain exceptions, but they could "acquire any properties of any kind or character they desire[d], provided they [did] not engage in the theatrical business." We cannot ignore the presence in the contract of the latter provision or its relation to the rest of the agreement, and there is nothing to indicate that the broad language used, that is, "any properties of any kind or character," did not include the right to acquire theater buildings or properties, provided that they did not engage in the theatrical business. Therefore, the pooling of money on the part of Irwin and H. W. Dubinsky, and the acts of forming the Dubinsky partnership and acquiring the physical properties of drive-in and other theaters, standing alone, did not constitute a violation of the 1946 contract. Even if in carrying on this activity Irwin and H. W. Dubinsky did not "give their

exclusive services, time and efforts to [their] employment" there would have been no violation of the 1946 contract because the provision calling for exclusive services, time and efforts was expressly made subject to their right to engage in such activity. The issue of whether the 1946 contract was violated by Irwin and H. W. Dubinsky turns on the question of whether they were in fact engaged during their employment in the theatrical business by setting up what is sometimes referred to as "dummy" or "sham" corporations to operate the theaters they had acquired, and if so, whether in so doing they failed to give their employer the "services, time and efforts" to which he was entitled, but which by the terms of the 1946 contract was not "exclusive" even though that term was therein used.

■ A court of equity may disregard the corporate entity in proper circumstances, of which this is one, Ruckels v. Pryor, 351 Mo. 819, 174 S.W.2d 185, and when we do the conclusion is justified, if not in fact impelled, and we conclude that Irwin and H. W. Dubinsky did, in concert with others, engage in the theatrical business during their employment by plaintiff. This makes it unnecessary to rule on the contention of plaintiff that the judgment pertaining to Count I is res judicata on the issue of whether Irwin Dubinsky was engaged in the theatrical business. However, the judgment as to Count I is not res judicata as to whether plaintiff is entitled to a constructive trust. That issue turns on equitable principles which were not resolved by the judgment as to Count I, and which we subsequently shall consider. See Abeles v. Wurdack, Mo., 285 S.W.2d 544, and the discussion there concerning the rule of res judicata.

As to the issue of whether either Irwin or H. W. Dubinsky, or both, did not give their employer their "exclusive, services, time and efforts," we note that there is no evidence whatever that H. W. Dubinsky engaged in any activity in connection with the construction or operation of the theaters except to be a partner in the Dubinsky partnership. At the rehearing there were some vague references to "problems" created at Leavenworth by H. W. Dubinsky, apparently to give the impression that he did not satisfactorily perform his duties. However, it was developed that when his employment was about to terminate plaintiff approached him about remaining as city manager, even though plaintiff had "heard rumors" that he and Irwin Dubinsky had constructed and owned some drive-in theaters. A fair analysis of the testimony of plaintiff's son, Stanley Durwood, who was general manager of all of plaintiff's theaters, was that the "problem" created by H. W. Dubinsky was that he had done such an able job at Leavenworth as city manager that his departure created "immense difficulties."

As to Irwin Dubinsky the situation is different. He was the moving force in the Dubinsky partnership and in the operation of the Dubinsky theaters through the operating corporations. However, other than the fact that he served in an advisory capacity, and wrote some checks and letters, there is little to indicate that he used any time or services belonging to plaintiff. Plaintiff relies primarily on activities by Irwin Dubinsky which occurred after he was discharged. While his activities at that time tend to support plaintiff's theory that he was then engaged in the theatrical business in partnership with H. W. Dubinsky, who was still an employee of plaintiff, they do not show that he was wrongfully using any services, time or efforts belonging to plaintiff. At the rehearing plaintiff attempted to show for the first time that Irwin was frequently absent from his office, and that he did not do his work properly. The evidence offered was unconvincing. At the first hearing plaintiff made some strong and sweeping accusations against Irwin Dubinsky concerning his derelictions, and promised, or perhaps a more accurate statement would be threatened, to present proof at the proper time. No proof whatsoever was forthcoming. At the rehearing plaintiff did not testify al-

though he was present. Stanley Durwood admitted that plaintiff had other employees checking on and making reports concerning Irwin Dubinsky's activities, but none of these reports were produced or the contents thereof revealed. One of the duties of the city manager, apparently his most important duty, was public relations which necessarily required Irwin Dubinsky to be at places other than in the theater office. In addition, he was permitted by the 1946 contract to continue his business connections with a hat company in St. Joseph, Missouri. Whatever he did in connection with the Dubinsky theaters apparently was done from his desk and office at the hat company. We shall mention one item of testimony at the rehearing, apparently intended to demonstrate that Irwin Dubinsky neglected his duties as city manager, to demonstrate that the testimony in this respect was unconvincing. Stanley Durwood testified at the rehearing that the theaters in St. Joseph under Irwin Dubinsky's management "were dirty, the staffs weren't efficient, the employees didn't have proper uniforms that should have uniforms, the morale was low among the personnel" and that Irwin Dubinsky operated "the sloppiest theaters" he had ever seen. Notwithstanding this testimony, and with no explanation of the inconsistency, Stanley Durwood admitted that he wrote a letter, dated May 17, 1948, to the managers of all the theaters which read in part as follows:

"E.D.D. [Edward D. Durwood] took a quick trip to St. Joseph Saturday night to take his first good look at the theatres there in over a year. This came as a surprise to all of us, and I must say that Dad was highly pleased with what he found. The boys were all on the job and gave us a warm welcome. The houses were all in especially fine order, even after the first show. One thing I must say, and that is that our theatres are as well kept as any in the country if not better than most. Fellows, I want to thank you for your cooperation in this respect. All of you are excellent housekeepers."

Our conclusion after a careful consideration of all the evidence is that although Irwin and H. W. Dubinsky did in fact engage in the theatrical business through the Dubinsky partnership and by use of the operating corporations which they in fact owned and controlled, they did not use any services, time or efforts in doing so which belonged to plaintiff, except possibly a negligible amount on the part of Irwin Dubinsky, and that plaintiff suffered no damage or loss whatever as a result thereof. In fact, by reason of the testimony of plaintiff concerning his personal opinion of the abilities of his brothers, which we subsequently set out, we think the plaintiff has shown that the minor use of time by Irwin Dubinsky could only result in a technical violation of the 1946 contract with no actual loss or damage to plaintiff.

We shall now examine the rules of law applicable to the factual situation which we have found to exist. As a general proposition, an employee who contracts to devote his entire time, services and efforts to the business of his employer has no right to use a part thereof in an independent business of his own. State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216; First Calumet Trust & Savings Bank v. Rogers, 7 Cir., 289 F. 953; Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833; Barnsdall Oil Co. v. Willis, 5 Cir., 152 F.2d 824, 153 F.2d 784; Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378. Of course, the requirement to devote one's entire time is subject to a reasonable construction and would not include time normally devoted to rest and recreation, First Calumet Trust & Savings Bank v. Rogers, supra, or time which by the employment contract the employee was entitled to devote to other activities. During such "free" time an employee may engage in any activity outside the scope of the business of his principal even though it is to his own

advantage and benefit. Pratt v. Shell Petroleum Corporation, supra; Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169. In addition to the above general rule pertaining to the use by an employee of his time, service and efforts, an employee may not place himself in a position in which his personal interests are or may be in conflict with that of his employer, Pratt v. Shell Petroleum Corporation, supra; Robert Reis & Co. v. Volck, 151 App.Div. 613, 136 N.Y.S. 367, or deal with the subject matter of the employment to his own advantage and to the disadvantage of his employer, Hunter v. Shell Oil Co., 5 Cir., 198 F.2d 485; Hubbard v. Dahlke, 277 Mo. 516, 210 S.W. 652, or use to his own advantage and to the disadvantage of his employer information acquired while acting in the scope of his employment. State ex rel. Duggan v. Kirkwood, supra; Warwick v. De Mayo, 358 Mo. 130, 213 S.W.2d 392; Cornale v. Stewart Stamping Corp., Sup., 129 N.Y.S.2d 808; George C. Miller v. Beagen, 293 Mass. 54, 199 N.E. 344; Wireless Specialty Apparatus Co. v. Mica Condenser Co., 239 Mass. 158, 131 N.E. 307, 16 A.L.R. 1170. This latter general rule is premised upon the idea that there has been a fraud perpetrated against the employer or an unfair advantage taken to his detriment and to the benefit of the employee. A confidential or fiduciary relation invariably is involved.

In the event of improper conduct on the part of an employee, as above referred to, the employer usually has an action at law for damages, but frequently the actual damages would be speculative and not subject to proof. In such situation a court of equity will, in the proper circumstances, afford relief to the employer by the imposition of a constructive trust in his favor on the profits and property wrongfully acquired by the employee. See Beatty v. Guggenheim Exploration Co., supra. The theory is that equity will compel one who has unfairly acquired and holds a property interest to convey that interest to the one to whom it justly belongs. Bogert, Trusts & Trustees,

2nd ed. § 471. However, the imposition of a constructive trust is not a matter of right upon the proof merely of a contract violation by the employee, but the constructive trust "is the formula through which the conscience of equity finds expression," and in decreeing or refusing to decree a constructive trust the court is not bound by an unyielding formula. The equities of the situation must shape the measure of the relief, if any. Beatty v. Guggenheim Exploration Co., supra.

The trial court found that both parties violated the 1946 contract, and we agree, and the defendants now contend that plaintiff is not entitled to equitable relief because of the doctrine of unclean hands. We shall first dispose of this contention, and in doing so shall comment briefly on two of plaintiff's violations in order to present a complete picture. As previously noted he was to pay his brothers as compensation 25% of the net profits from certain theaters for a stated period, and the 1946 contract set out in specific terms how the net profits should be computed. After figuring net profits Edward D. Durwood deducted therefrom the 25% as compensation to his brothers and then paid them 25% of the remaining amount. The trial court correctly termed this to be an "astounding theory" and noted that if the Dubinsky brothers were to have received 100% of the net profits, under plaintiff's theory they would have received nothing. In addition, as noted by the trial court, after the 1946 contract was executed plaintiff formed a "management corporation" for profit under the name of "Durwood Theaters, Inc.," all the stock of which was owned by plaintiff and his children. A 10% charge was made against the gross income of each theater to be paid to the management corporation, and this expense was deducted from gross receipts in figuring net profits. The trial court mildly commented that "The theories and accounting practices attempted by the plaintiff to cut down on the amounts owed to defendants under the contract are novel, ingenious and perhaps even somewhat shocking." These violations on the

part of plaintiff were not insignificant in their effect. They were rectified by the accounting pursuant to Count I, and provide the basis for the judgments against plaintiff. In our opinion the improper manipulations by plaintiff were not the result of an honest but erroneous interpretation of the 1946 contract. They smack of every breach of fair dealing which plaintiff has leveled at his brothers. Plaintiff attempts to excuse them on the ground that he acted "on the judgment of his accountants and lawyer." If that be an excuse or justification, then this lawsuit may be terminated with the comment that the record clearly indicates that everything Irwin and H. W. Dubinsky did of which plaintiff complains was done upon the advice of and pursuant to the recommendation of their lawyer. The trial court indicated that since the doctrine of unclean hands "cannot be applied to both plaintiff and defendants because of the final determination of Count I," it would not apply the doctrine as to Count IV. However, Count I was for an accounting at law. By it no equitable relief by either side was sought, none was granted, and the doctrine of unclean hands had no application. We choose, however, in our discretion not to invoke the doctrine as a complete bar against plaintiff for equitable relief at the urgence of those whose hands are unclean. See Smith v. Holdoway Construction Co., 344 Mo. 862, 129 S.W.2d 894. Instead we shall take all of this conduct into consideration in determining whether under all the circumstances, of which unclean hands is only one factor, a court of equity should or should not grant equitable relief to plaintiff in the form of a constructive trust as requested.

The employment by plaintiff of Irwin and H. W. Dubinsky was not the usual situation wherein the employer seeks to utilize the employee's services and abilities and entrusts the employee with secrets of his business. The employment relation here was created as the result of a compromise settlement of extended litigation, and was conceived in extreme bitterness and distrust which continued throughout the entire rela-

tionship as evidenced by explosive outbursts by plaintiff during his depositions and his testimony before the referee. We find it extremely difficult to find any confidential relationship between Irwin and H. W. Dubinsky on one side and Edward D. Durwood on the other which was subject to be violated. Of course, regardless of the feelings of the parties for each other, and the lack of a confidential relationship, there were certain contractual duties owed by Irwin and H. W. Dubinsky to their employer, and by their employer to them. We shall, however, consider the merits of this case in the light of the above related background, and examine the theories advanced by plaintiff as to why under the facts we have outlined he contends he is entitled to the requested constructive trust. We will first mention that there is no contention, and the evidence would not support one if made, that in the construction and operation of the Dubinsky theaters, or in the acquisition of the profits and property as to which a constructive trust is sought, Irwin and H. W. Dubinsky used any money or property of their employer. Neither did they use any trade secrets or other information concerning their employer's business gained or made available to them by reason of their employment. For this reason the facts of this case distinguish it from such cases as State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, 2 A.L.R.2d 216; Wireless Specialty Apparatus Co. v. Mica Condenser Co., Ltd., 239 Mass. 158, 131 N.E. 307, 16 A.L.R. 1170; Warwick v. De Mayo, 358 Mo. 130, 213 S.W.2d 392; Cornale v. Stewart Stamping Corp., Sup., 129 N.Y.S. 2d 808; Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833.

Plaintiff contends that Irwin and H. W. Dubinsky had a duty to tell him that they believed the construction and operation of drive-in theaters would be a good investment, and by their breach of loyalty in not doing so he was thereby denied the opportunity to enter the field at the most opportune time. Plaintiff had no drive-in

theaters prior to the termination of the employment of defendants, and there is no contention that either Irwin or H. W. Dubinsky was employed to look for or obtain sites for drive-in theaters. Plaintiff cites and relies on Beatty v. Guggenheim Exploration Co., supra, and Michigan Crown Fender Co. v. Welch, 211 Mich. 148, 178 N.W. 684, 13 A.L.R. 896. In those cases the employee, by reason of his duties, obtained information not known to his employer and then used it to his advantage and to the disadvantage of his employer, a circumstance not existing here. In any event, plaintiff affirmatively establishes that there was no reason for Irwin or H. W. Dubinsky to give him any advice or suggestions concerning his business, and that it would not have been any breach of loyalty for them not to do so. Plaintiff testified that he considered his brothers as "nothing but janitors and equal in ability," that he "never talked to them beyond a five cent piece, because that was the limit * * * of what they could handle," and further that "they had nothing to do with anything, excepting as a hired hand." It is true that plaintiff's son, Stanley Durwood, testified at the rehearing that he considered his uncles as "the two most experienced men in the organization outside of my father" and that his father had suggested he seek their advice concerning the advisability of acquiring some drive-in theaters. We note, however, that this testimony, inconsistent with that of plaintiff, occurred only after the petition was amended to include Count IV and it became material for the first time to show a breach of duty or loyalty by Irwin and H. W. Dubinsky in this respect. Although plaintiff was present at the rehearing he did not take the stand and refute his previous testimony. We see no reason why plaintiff should be entitled to complain that his brothers, of whom he thought as he did, did not tell him what he was in an equally favorable position to know, and, according to him and his son, was better qualified to appreciate. The facts of this case distinguish it from those cited and relied on by plaintiff.

Plaintiffs also rely on cases, such as Robert Reis & Company v. Volck, 151 App.Div. 613, 136 N.Y.S. 367, in which the employee entered into a competing business with his employer. See also the cases cited in the annotation in 13 A.L.R. at pp. 900 and 924. There was no possible competition in this case. The theaters of the Dubinsky brothers were far removed from any theater of plaintiff. Also, plaintiff testified that the theaters of the Dubinsky brothers could not interfere with his ability to get pictures for his theaters "unless I was in the same town * * *." For these reasons we do not consider this case to be comparable to those where the courts have used as a basis for imposing a constructive trust that the employee wrongfully engaged in a business competing with his employer or dealt with the subject of his employment to his advantage and to the disadvantage of his employer. See for example Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833; Ohio Oil Co. v. Sharp, 10 Cir., 135. F.2d 303; Hunter v. Shell Oil Co., 5 Cir.,. 198 F.2d 485.

When analyzed this case resolves itself down to the situation where plaintiff violated the 1946 contract with the intent to deprive his brothers of a substantial part of the agreed to compensation, and now asks a court of equity to impose a constructive trust in his favor on the profits and properties acquired by his brothers by engaging in the theatrical business (which according to one method of calculation by plaintiff amounts to $474,107.68 with interest from July 1, 1949) on the basis that his brothers. also violated the terms of the same contract, when by that violation no actual damage or loss resulted to plaintiff, and according to the plaintiff's testimony none could have resulted. Plaintiff argues that he is entitled· to the constructive trust by showing the contract violation without showing any damages, and he cites First Calumet Trust & Savings Bank v. Rogers, 7 Cir., 289 F. 953, and Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833. In those cases it was held that proof of actual damages was not

·required under the circumstances of those cases. However, actual damages not ·capable of proof was inherent in each situation. In addition, there was no breach on the part of the employer, and in each ·case there was a breach of a fiduciary relationship, and in the Pratt case there also was wrongful dealing with the subject of the employment. We do not consider that this court is bound under the facts of this case by the rule announced in those two cases ·pertaining to the proof of actual damages, or that they require or even justify the imposition of a constructive trust in this case.

Under the circumstances we have outlined ·we decline to lend to plaintiff the discre- ·tionary and extraordinary powers of a court of equity to impose the requested constructive trust in this case to an equal wrongdoer when so to do would impose a remedy for a breach of contract so harsh and disproportionate to the injury that it would result in punitive action. To do so is not the function of a court of conscience.

■ We shall now consider the appeal of the Dubinsky brothers from the judgment entered pursuant to Count III.

·The 1946 contract provided:

·"8(h) First Parties [Dubinsky Brothers] agree not to engage in the theatri- ·cal business directly or indirectly for and during a period beginning as of May 9, 1946, and expiring on July 1, 1959, in Leavenworth, Kansas; St. Jo- ·seph, Missouri; Kansas City, Missouri. and Jefferson City, Missouri.

*    *    *    *    *    *

"17. Second Party [Edward D. Durwood] shall at all times as against First Parties have the sole and exclusive right to use the name of 'Durwood-Dubinsky' or 'Durwood-Dubinsky Theaters,' or 'Durwood-Dubinsky Bros. or Durwood-Dubinsky Bros. Theatres.' Second Party shall also have the exclusive right to use the name 'Dubinsky Bros.' or 'Dubinsky Bros. Theatres' in the cities of St. Joseph, Kansas City and Jefferson

City, Missouri, and Leavenworth, Kansas, for the period commencing as of May 9, 1946 and ending June 30, 1959."

On September 29, 1950 the trial court issued its temporary injunction enjoining Irwin and H. W. Dubinsky and Dubinsky Brothers Theaters, Inc. from "engaging 'directly or indirectly' in the theatrical business in St. Joseph, Missouri, and from managing, operating, directing or supervising the direction and operation of [eight named theaters] or any others, in or from St. Joseph, Missouri, under the name or names of 'Dubinsky Brothers' or 'Dubinsky Brothers Theaters,' * * *." Although not specifically limited in the order, the parties agree that the injunction expired on June 30, 1959, which was before the 1961 judgment was entered in which the injunction was made permanent. The only reason that the issue is not now moot is that the defendants contend that the temporary injunction was improperly entered and they are entitled to their damages from the bond posted by plaintiff. The injunction was based on what occurred after the defendants' employment with plaintiff terminated, and that such activity violated the provisions of sections 8 (h) and 17 of the 1946 contract.

Immediately after July 1, 1949, Mannie Schermer caused new stock certificates from each of the operating corporations to be issued, transferring 25% of the total stock in each corporation to himself and his wife; 37½% to Irwin and Rosalind Dubinsky; 18¾% to H. W. Dubinsky; and 18¾% to Bertha Schweitzer. Irwin Dubinsky took over the active management of the chain of Dubinsky Theaters. In September 1949 a corporation was chartered in Missouri by the name of Dubinsky Brothers Theaters, Inc., with its place of business at 407 Tootle Building, St. Joseph, Missouri, for the purpose, among others, of engaging in the theatrical business, purchasing of motion pictures, and leasing and selling theaters. The original three incorporators did not include the defendants but did include their counsel. This corporation purchased a theater at Cape Girardeau, Missouri from

Irwin Dubinsky, which had just been acquired by him, and then the three incorporators transferred all of their stock to Irwin and Rosalind Dubinsky, H. W. Dubinsky, Bertha Schweitzer, and Mannie, Burdie and Lloyd Gene Schermer. On the same day the corporation leased a theater at Moberly, Missouri for a term of ten years. Irwin Dubinsky was elected president and H. W. Dubinsky was elected secretary-treasurer. Thereafter Irwin Dubinsky managed this corporation and exercised the office and duties of president. In addition to these two theaters acquired by Dubinsky Brothers, Inc., two additional theaters were acquired in Lincoln, Nebraska, but the record is not clear how they were owned. All eight of the theaters were managed by Irwin Dubinsky from a home office in St. Joseph, Missouri. At that office the records of the Dubinsky partnership, the Fort Madison partnership, Dubinsky Brothers Theaters, Inc., and the operating corporations were all kept, including journals, general ledgers, check books, minute books, correspondence, contracts and corporate records. Daily reports were received from each theater, checks in payment of bills and expenses of the theaters were made out and mailed, arrangements were made for pictures to be shown at the theaters, supplies were purchased and telephone calls in connection with the operation of the theaters were made and received. Letterheads used by Irwin Dubinsky were labeled "Dubinsky Brothers" or "Dubinsky Brothers Theaters, Inc." with the address stated thereon as Post Office Box 745, St. Joseph, Missouri. Advertisements were published in "Box Office," a periodical devoted to theatrical news and widely circulated throughout the country, in which the words "Dubinsky Brothers, St. Joseph, Missouri," were used. In carrying on the above work at the St. Joseph office a stenographer and a bookkeeper were regularly employed.

On this appeal the defendants, as appellants, first contend that plaintiff abandoned the trade name "Dubinsky Brothers." Plaintiff's name originally was Edward

Dubinsky, and he had it changed to Edward Dubinsky Durwood in 1936. Prior to that time the chain of theaters operated by him and his brothers was known as "Dubinsky Brothers Theaters" or the "Dubinsky Theaters." When plaintiff's name was changed the theaters were known as "Durwood-Dubinsky Theaters." On April 8, 1947, after the 1946 contract was signed by which the previous partnership was dissolved, plaintiff notified the managers of all the theaters that the name "Dubinsky" or "Dubinsky Brothers" was not to be used in any way in connection with the theaters, but that the name "Durwood" alone was to be used. Defendants contend that this constituted "a clear renunciation of any rights that had accrued to [plaintiff] under * * the contract." They rely on cases pertaining to the abandonment of a trade-mark such as Foss v. Culbertson, 17 Wash.2d 610, 136 P.2d 711; Sherwood Co. v. Sherwood Distilling Co., 177 Md. 455, 9 A.2d 842; Eiseman v. Schiffer, C.C., 157 F. 473; and the cases cited in the annotation at 3 A.L.R.2d 1301.

We do not consider the above cases or the rule therein announced to be controlling. The chain of theaters operated by plaintiff and defendants as a partnership prior to 1946 were known under the name of "Durwood-Dubinsky." The partnership was terminated, and the theater chain was to be operated by Durwood alone, and it was obvious that he intended to terminate the use of the name Dubinsky in connection with his theaters. However, because of the previous use of the name "Dubinsky" in connection with the theaters, plaintiff purchased from defendants the exclusive right of control of the name "Dubinsky Brothers" and "Dubinsky Brothers Theaters" for a limited period of time in the four areas where the Durwood theaters would be operating. The obvious purpose was to eliminate the use of the name "Dubinsky" in the four areas during the time plaintiff would endeavor to establish the name "Durwood" for his theaters. We do not consider this to constitute an abandonment of the name within the rule of the

cited cases, at least between plaintiff and defendants. Whether or not a stranger to the 1946 contract could use the name "Dubinsky Brothers" or "Dubinsky Brothers Theaters" by reason of plaintiff's renunciation is immaterial.

Defendants next contend that if plaintiff had not abandoned the use of the name "Dubinsky" there was no breach of contract by them, and if there was it was technical, trivial and resulted in no damage. They base this contention on the fact that they did not operate any theater in St. Joseph, Missouri. This places a too narrow meaning on the 1946 contract. By it defendants agreed not to engage directly or indirectly in the theatrical business in St. Joseph, Missouri. The restriction was not limited to the operation of a theater. By maintaining the home office of their theater chain in St. Joseph from which eight theaters, although located at other places, were operated, controlled and managed, defendants were at least indirectly engaged in St. Joseph in the theatrical business. Although plaintiff did not establish any actual damage, this was not necessary. The purpose of the contract was to prevent damage, and the plaintiff was entitled to have the purpose carried out. This question is controlled by the rule announced in the following cases. Matthews v. First Christian Church of St. Louis, 355 Mo. 627, 197 S.W.2d 617; Kreger Glass Co. v. Kreger, Mo.App., 49 S.W.2d 260; Hall Manufacturing Co. v. Western Steel & Iron Works, 7 Cir., 227 F. 588; Renwood Food Products, Inc. v. Schaefer, 240 Mo.App. 939, 223 S.W.2d 144; Thomas Patrick, Inc. v. KWK Investment Co., 357 Mo. 100, 206 S.W.2d 359.

The above two contentions are the only ones advanced by defendants on this appeal as to why the injunction pursuant to Count III was improvidently entered. They are, therefore, the only ones we shall consider. See Schlanger v. Simon, Mo., 339 S.W.2d 825.

We turn now to the other assignments of error by plaintiff. The trial court first entered its judgment on November 28, 1960 and motions for new trial were filed by both sides. In that judgment reference was made to "plaintiff," to the "Administratrix of the Estate of Barney Dubinsky," and to "the defendant Commerce Trust Company." On January 10, 1961 while the motions for new trial were pending, the trial court set aside the judgment and entered a new judgment identical to the November judgment in every respect except that where the word "plaintiff" appeared it was changed to "plaintiffs," "Administratrix" was changed to "Executrix," and the word "defendant" was left out of the reference to the Commerce Trust Company. Plaintiff now contends that the entry of the January judgment was error because there was no notice and opportunity to be heard and because it was done "after the court's thirty day control over the [November] judgment had expired." Plaintiff does not say what he thinks the relief should be, but if the January judgment is void the November judgment would be reinstated. However, the trial court had the right to correct the judgment when it did because timely filed motions for new trial were pending. See Civil Rule 78.01, V.A.M.R.; Borders v. Niemoeller, Mo.App., 239 S.W. 2d 555; and Ruckman v. Ruckman, Mo. App., 337 S.W.2d 100. We do not rule whether or not under the circumstances plaintiff was entitled to notice of the proposed correction of the judgment because it is immaterial if plaintiff was not prejudiced thereby and in the point and the argument thereunder no attempt whatever is made to show any prejudice. In a subsequent point, however, plaintiff contends that the trial court erred in awarding money judgments in favor of Irwin and H. W. Dubinsky and the estate of Barney Dubinsky against Stanley Hugh Durwood, Marjorie Beth Grant and Richard Mark Durwood as individuals. If such a judgment was entered, and we think it was, it occurred as the result of changing the word "plaintiff" wherever it appeared in the judgment to "plaintiffs." In this way the

judgment pursuant to Count I was entered against the three named persons individually who had been made plaintiffs following the death of Edward D. Durwood only because by Count IV a constructive trust was sought on real estate. The three heirs of Edward D. Durwood should not be held personally liable for the judgment in favor of the Dubinsky brothers for their unpaid compensation. That is an obligation of the estate of Edward D. Durwood only, and we see no reason why it should be held that by requesting to be substituted as plaintiffs for the reason they did the heirs of Edward D. Durwood agreed to this liability. Prejudice did result to these individuals by the change in the judgment, but it can be completely removed, and we therefore modify the judgment so that the portion thereof entered pursuant to Count I does not impose liability on the heirs of Edward D. Durwood in their individual capacity.

On January 10, 1957 after the mandate on the previous appeal was handed down, plaintiff deposited with the clerk of the circuit court as a "special deposit" the sum of $31,932.19 "for judgment of Ruth Dubinsky," the executrix of the estate of Barney Dubinsky. Plaintiff asserts that this represented the amount of the judgment pursuant to Count I against plaintiff in favor of the estate of Barney Dubinsky plus interest from the time the money was due to the date of the 1954 judgment and from the date of the mandate to the date of the payment. It did not include any interest on the amount of the judgment during the period the appeal was pending. At the conclusion of the second trial plaintiff made an oral motion that the court "enter the necessary appropriate order satisfying the judgment on Count I in full." He explained to the court that "under the judgment as finally affirmed under Count I it was held that the plaintiff only owed a net amount to Ruth Dubinsky, that nothing was owed by him to Irwin and H. W. Dubinsky, * * *." We have previously held that plaintiff was in error in this contention.

On this appeal plaintiff now asserts that the trial court erred "in failing to satisfy that part of the [1954] judgment for Barney's estate against plaintiff." That is not what he requested the trial court to do. Assuming that under the unsual circumstances of this case the trial judge would have been authorized to enter an order satisfying "that part of the [1954] judgment for Barney's estate against plaintiff" if the amount placed on deposit was the proper amount, a matter we do not decide, we could not convict the trial court of error in failing to do that for which no request was made, particularly when the trial court properly refused the only request which was made.

■ Plaintiff next contends that it was error for the trial court to assess 15% of the costs against Irwin and H. W. Dubinsky and 85% against him because in the 1954 judgment 12% of the costs was assessed against the estate of Barney Dubinsky, and, plaintiff says, that was a part of the judgment pertaining to Counts I and II which was affirmed on the first appeal. After the opinion on the first appeal was handed down, the appellants in that appeal asked this Court to re-allocate costs in the trial court. We held in a per curiam opinion, Durwood v. Dubinsky, Mo., 291 S.W. 2d 909, 925, that the re-allocation of the costs was "a matter the trial court should pass on originally." We thereby expressly ruled that the allocation of costs was not included in the order affirming the 1954 judgment as to Counts I and II. In addition, there can be but one final judgment and one final costbill, and the costs in this case could not properly be allocated between the parties until the conclusion of the entire case.

Plaintiff also contends that the allocation of costs between him and defendants was improper, and that "half of the total costs" should be taxed against Irwin and H. W. Dubinsky. This is based on the assumption that "plaintiffs should prevail on Count IV." We have held otherwise,

and no contention is made that the allocation of costs is erroneous if the trial court's judgment is affirmed as to Count IV.

The judgment is modified so as not to impose personal liability on the heirs of Edward D. Durwood in their individual capacity for the amounts awarded to Irwin and H. W. Dubinsky and the executrix of the Estate of Barney Dubinsky pursuant to Count I and as modified the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.